Daniel William MITCHELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 59860.

Court of Criminal Appeals of Texas, En Banc.

Sept. 19, 1979.

Rehearing En Banc Denied Oct. 24, 1979.

Terrence A. Gaiser, Houston, for appellant.

Carol S. Vance, Dist. Atty., Lewis Dickson, III, and Connie B. Williams, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

CLINTON, Judge.

Any method worthy of being called a "system" is expected to work at least toler-ably well. What is now before us demonstrates, however, that sometimes the criminal justice system functions at a level well below acceptable tolerance. With the thought that critical evaluation of one operation of the mechanism may provoke self-examination of others, we assay the instant situation in some detail. Our critique is not of individual performance but of the mechanical operation of the system itself in this case.

Appellant was arrested in the evening of January 11, 1977, as he was getting out of his automobile in a parking stall connected with an apartment complex in which he resided on Ella Boulevard in Houston. According to the arresting officer, appellant had just placed in his mouth a baggy containing a substance that the officer believed to be and was found to be heroin—four grams of it. We infer from the state of the record now [1] before us that appellant had been confined ever since, first in the Harris County Jail and now in the Texas Department of Corrections.

Returned March 14, 1977, the second indictment charges as the primary offense intentional and knowing possession of heroin followed by two enhancement paragraphs, one alleging a 1956 conviction for theft and the other a 1967 conviction for possession of heroin. The seriousness of the situation lies in the possible maximum punishment: confinement for life.

---

[1] The appeal on original submission was properly dismissed by a *per curiam* panel opinion April 25, 1979 because although all grounds of error challenged admissibility of the heroin, the record did not then show the issues ruled on by *the trial court after a suppression hearing* had been raised by written motion filed prior to trial. The reason the written motion—it had,. indeed, been filed with the clerk of the court—was not in the record was because it had been filed among the papers in Cause No. 257,373, the number given the original indictment, but all subsequent proceedings were held in Cause No. 259,653, the number of the "reindictment," and the motion never made it from the former to the latter—notwithstanding both the second docket sheet and indictment show on their face that Cause No. 259,653 is a "reindictment" of Cause No. 257,373. Responding to a motion to supplement the appellate record filed May 8, 1979, the trial court caused a supplemental transcript to be prepared that contains the motion to suppress evidence filed March 18, 1977, four days after the grand jury returned the second indictment to the same district court. All this in the face of a written designation of *record on appeal, prepared by appellant pro se* and filed by the clerk March 14, 1979, that expressly designated "particularly the hearing conducted on the Motion to Suppress" and all motions, pre-trial proceedings and other identified papers.

*Appellant pro se* forwarded to the Clerk of this Court, within time permitted for filing a Motion for Leave to File a Motion for Rehearing, his motion to reinstate the appeal—after, so he informs the Court, *reading in a newspaper* that the appeal had been dismissed, but not knowing on what basis. Since his motion was timely filed there is no need to order the appeal reinstated for we treated and granted the motion as one for leave to file for rehearing.

The motion to suppress, filed March 18, 1977, by what appears to be retained counsel, was heard April 19, 1977. The crux of appellant's theory for suppressing as evidence all "items seized as a result of the search" is stated as follows:

"The Defendant was getting out of his automobile when Defendant was approached and placed under arrest without probable cause. He was removed from his vehicle to the police car, and without proof of exigent circumstances, the officers had no lawful right or authority to search the Defendant or his vehicle without first securing a search warrant."

Houston Radio Patrol Officer R. E. Ashwood testified that acting on information[2] from one he believed to be reliable that at about a given time and stated place appellant would have in his possession a quantity of heroin for sale,[3] he and his partner[4] went to a place near the apartment complex and shortly an automobile fitting the make and license number previously given him turned into the complex premises. Following its route the officers spotted the car, backwards in a parking stall, with its driver still inside. Though the precise sequence of movements that followed is not made clear, we gather that the officer approached the automobile simultaneously with the opening of its door automatically turning on its dome light and thereby revealing the face and figure of appellant. Still approaching him, the officer saw appellant "reach into his shirt pocket and pull out this baggy with a substance in it that I believed to be heroin and put that in his mouth." Until that moment neither officer had said a word to appellant nor laid a hand on him. After that moment we are left to wonder just what occurred:

"Q. Did you retrieve the substance?

A: Mr. Garza, the surveillance officer, did, and he retrieved it from him immediately." [5]

Then appellant was formally arrested.

The testimony concluded and without hearing argument of counsel—leave to be heard was not requested—the trial court rendered its ruling: "The motion is overruled. I think it was a good arrest."

The case was reset for trial on August 3, 1977, then for November 2, 1977. On that day counsel for appellant presented and the court granted him leave to withdraw.[6] Trial was then set for November 29, 1977, at which appellant appeared with other counsel who, we infer, was retained; the case was reset for January 10, 1978. Through written motion the trial court was informed that appellant had failed to cooperate with and no longer desired the services of his second counsel. Leave to withdraw granted, with third retained counsel apparently standing by, for there followed a plea hearing. It created issues that are also brought to the Court in this appeal.

A plea bargain had been struck. Executed by appellant and his counsel and approved by counsel for the State and by the presiding judge were two separate papers: "Waiver of Trial by Jury in Felony less than Capital" in the usual acceptable form and "Stipulation of Evidence," in which appears above the signature of appellant and the jurat of a deputy clerk, *inter alia*, the following statement:

2. We pretermit a recitation of all aspects of reasonable suspicion or probable cause or whatever motivated the quest, for the issue is now moot.

3. At one point, asked whether the informant said he *knew* that appellant would have heroin, the officer, in what has to be jargon only another criminal justice system person would appreciate, actually replied, "No, the actor had told the informant that when he came to the location he would have a quantity of heroin for sale." How have we come to permit such "nonspeak" as this to become the parlance of the courtroom?

4. Officer J. Colunga, who was driving the patrol car.

5. This testimony is the first, only and last mention of surveillance officer Garza. The record tells nothing else about him or just how he went about retrieving the "substance" from appellant "immediately."

6. There were references to antagonisms, accusations and statements that indicated a loss of the faith, confidence and trust that are essential to a satisfactory attorney-client relationship.

"* * * I waive my right against self-incrimination and confess the following facts:

On January 11, 1977, in Harris County, Texas, I did intentionally and knowingly possess a controlled substance, namely Heroin."

(The enhancement paragraphs were waived by the State.)[7]

The admonishment of appellant by the trial court is exceptionally correct, clear and concise. Admitted into evidence as a single exhibit, State's Exhibit No. 1, were the executed and approved waiver and stipulation, which appear to our eye to have once been stapled together—alas, they are separated again. With the recommendation of sixteen years confinement and informed that it was a product of bargaining, the careful presiding judge then ascertained from him that appellant understood the agreement and cautioned appellant: "Do you understand that if I follow that recommendation you cannot appeal this case?" and received an affirmative response. The trial court then found appellant guilty and assessed punishment in accordance with the bargain, in pertinent part:

"THE COURT: All right, on your plea of guilty, *together with the stipulations and waivers* filed in this cause, I find you guilty of the felony offense of possession of a controlled substance . . . and assess your punishment at confinement . . . for sixteen years."

Appellant waived ten day period for filing motions and was sentenced to serve not less than two nor more than sixteen years. Then and there in open court counsel for appellant announced, "We will give notice of appeal, Your Honor."

7. We must confess astonishment in this:
"THE COURT: Have you ever, in this or any other jurisdiction been convicted of an offense of the grade of felony?
DEFENDANT: No sir."

8. We know the court reporter did prepare a statement of facts that he certified January 17, 1978 at the expense of Harris County. Briefs, including appellant's *pro se* brief, were filed on or about September 15, 1978. Meanwhile, so appellant informs the Court in his motion to reinstate appeal, "Appellant persuaded his family *to purchase a copy* of the Statement of

The docket sheet contains the following germane entries in the order in which they appear—all on the same January 10, 1978:

"The Court has assessed punishment not exceeding that recommended by the State and agreed to by the Defendant and his attorney. Permission to appeal will not be granted in this case absent written authorization by the court."

"To which action of the Court the defendant, by and through his attorney, excepts to the ruling of the Court and gives notice of appeal to the Court of Criminal Appeals . . ."

"Defendant filed paupers oath . . . attorney appointed on appeal."

Among the papers is a sworn "paupers oath" with the prayer "the Court direct" the court reporter to prepare a statement of facts, and appended to it is an order signed by the court, directing the reporter to do so.[8] The sentence, erroneously dated January 10, 1976,[9] also notes the notice of appeal and then provides that because that notice was given "execution of the sentence is deferred to await the judgment and order of our Court of Criminal Appeals in this behalf," and finally recites that appellant is transferred to the Texas Department of Corrections "pending mandate of affirmance Court of Criminal Appeals . . ."[10] Also in the record is a commitment issued by the clerk of the court directing the sheriff to deliver appellant to TDC, "having given Notice of Appeal to the Court of Criminal Appeals . . ., pending mandate from said Court."

When the record was completed and, as earlier noticed, no objections were filed, the

Facts and Transcript . . . and prepared and filed his pro se brief."

9. Because this is an apparent typographical error, the trial court should correct the sentence, *nunc pro tunc.*

10. As best we can tell, neither judgment nor sentence bears the signature of the trial judge. To the extent that omission suggests they were not presented to him, the trial court was deprived of an opportunity to review and detect any apparent errors.

trial court approved an order finding it correct, approving it and ordering it filed "as the record in said cause." After briefs were filed with the clerk of the court, the trial court signed an order directing its clerk immediately to cause the appellate record to be transmitted to the Clerk of this Court.[11]

The cause was submitted November 28, 1978 to a panel of the Court. Things get "curiouser and curiouser"—just as Alice exclaimed.[12]

It will be recalled that the brief presented by appointed counsel for appellant challenged *only* admissibility of the controlled substance. In his well written *pro se* brief appellant also attacked seizure of the heroin but limits his challenge to a narrow contention that reliability of the informant was not adequately demonstrated. For its part, passing over the threshold issue, the State tells us in its reply to grounds of error advanced by appellant's counsel:

"Candidly, the propriety of the officers [sic] actions in the instant case must be determined in light of *probable cause* for either *arrest, search,* or *both.*" (Emphasis in original.)

█ Now, in his recent motion, *appellant,* himself, is the first person making his way through the maze of this case who had directly and pointedly stated what is at once obvious: The brief filed by his appellate attorney "should have been designated a 'frivolous appeal brief' in that the grounds of error raised therein were *foreclosed to review* by this Court's decision in *Stiggers v. State,* Tex.Cr.App.*1974,* 506 S.W.2d 609." Appellant, more than one

year and four months after his trial on a plea of guilty, has stated plainly in writing what no one else did: Search and seizure errors claimed here are *not* involved in the conviction "as no physical evidence obtained thereby had been introduced at trial." He is absolutely correct, as *Ferguson v. State,* 571 S.W.2d 908 (Tex.Cr.App.1978) affirms.[13] All grounds regarding admissibility of the controlled substance are overruled since it was never admitted into evidence.

In his *pro se* brief appellant contends in his second ground of error that the State failed to introduce evidence to support judgment of conviction as required by Article 1.15, V.A.C.C.P. Specifically he asserts that the "Stipulation of Evidence" was not formally introduced. Factually, appellant errs. As recited *ante,* the exhibit is in the record before us, stapled to a page headed State's Exhibit No. 1—Stipulation of Evidence. Thus, *Garcia v. State,* 571 S.W.2d 896, 900 (Tex.Cr.App.1978) is inapposite. The ground of error is overruled.

█ His third ground of error contends that the State failed to introduce probative evidence that the substance appellant was charged with possessing was in fact heroin. He makes a somewhat convoluted argument that his judicial confession is not in itself enough to show that appellant "knew" it to be, or was somehow qualified to say it was, heroin. As appellant recognizes, however, *Pesina v. State,* 560 S.W.2d 97 (Tex.Cr.App.1978), is dead set against him, and we do not see the horrors he conjures up in arguing that the decision is "dangerous" and should be overruled. Appellant's third ground of error is overruled.

11. Neither that order nor any other in the record reflects that the trial court carried out the duty imposed by Article 40.09, § 12, V.A.C.C.P., "to decide from the briefs . . . whether the defendant should be granted a new trial . . .," and we are not otherwise advised. Without elevating it to a "presumption of regularity"—a risky one in the circumstances of this case—we merely *assume* the court did so. Having read the brief for the State, the trial court had to notice a threshold issue raised on its first page: "In light of the Court's admonishment regarding Appellant's waiver of appeal, the notice of appeal was without the trial

court's consent and therefore ineffective to confer jurisdiction to this court . . . Art. 44.02 V.A.C.C.P."

12. Lewis Carroll, "Alice in Wonderland" Ch. 2.

13. In fairness to the State we note that it filed a supplemental brief directly in this Court November 28, 1978, in which both *Ferguson* and *Stiggers* were cited, but somewhat masked their holdings by alluding to a plea of guilty being supported by a judicial confession so that "any erroneous ruling on the (pretrial) motion does not vitiate the conviction."

Finally, the threshold contention by the State—"the notice of appeal given was without the trial court's consent and therefore ineffective to confer jurisdiction to the court"—brings us back to still another malfunction in the system. Article 44.02, V.A.C.C.P., precludes appeal where conviction follows from a plea bargaining that is received and respected in assessment of punishment by the trial court—"'except on those matters which have been raised by written motion filed prior to trial.'" See generally *Decker v. State*, 570 S.W.2d 948 (Tex.Cr.App.1978). We now know what all parties must have, that appellant *did* file and present a motion to suppress, and his original brief and the one filed by counsel on his behalf addressed the issues raised by the motion, albeit a futile endeavor. But the motion, having been filed, presented, heard and ruled on, provides appellate jurisdiction, and, called on to do so, we have exercised it here.[14]

Our fervent hope is that distractions and diversions, permitted *any* party by inattentive preparation of and cursory approval of an appellate record, will cease to hinder smoother operation of the criminal justice system. To that end this critique is submitted.

The appellant's motion for rehearing is denied and the judgment of conviction is affirmed.

DOUGLAS and DALLY, JJ., concur in result.

---

14. With jurisdiction to decide the search and seizure questions the Court determined it expedient to decide the "no evidence" and "insufficient evidence" contentions advanced by appellant *pro se* in order to avoid additional expenditure of judicial time and effort in a post-conviction habeas corpus proceeding preliminary to a federal one, as in *Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) and *Jackson v. Virginia*, —— U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) 25 Cr.L. 3229.