Donald Charles GILLARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 83 020 CR.

Court of Appeals of Texas, Beaumont.

Oct. 12, 1983.

J. Michael Bradford, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Donald Charles Gillard pleaded "no contest" to a misdemeanor information of intentionally and knowingly possessing marihuana in a usable quantity of under two (2) ounces.

The trial judge found that it was in the best interest of society and this Appellant (after hearing evidence and finding that it substantiated the appellant's guilt) that the Court defer any further proceeding without entering an adjudication of guilt. Appellant was placed on six-month probationary period and assessed fine of Two Hundred and No/100 ($200.00) Dollars, plus court costs.

Sole ground of error concerns the trial court's ruling on motion to suppress evidence, which was written and filed prior to trial. Appellant contends the evidence was the tainted fruit of an automobile search conducted in violation of the *U.S. CONST. amend IV* and *TEX. CONST., art. I, Sec. 9* (1876).

Although according to *TEX.CODE CRIM.PROC.ANN. art. 42.13, Sec. 3d(a)* (Vernon Supp.1982–1983), no appeal may be taken from hearing where the trial court

defers further proceedings without guilt adjudication, we address the appeal because of *TEX.CODE CRIM.PROC.ANN. art. 44.02* (Vernon 1979). *See Mitchell v. State,* 586 S.W.2d 491 (Tex.Cr.App.1979). *But see Daniels v. State,* 615 S.W.2d 771 (Tex.Crim. App.1981) and *Richardson v. State,* 617 S.W.2d 267 (Tex.Crim.App.1981).

The trial judge entered deferred adjudication order stating in pertinent part:

"... after hearing evidence finds that it substantiates the defendant's guilt and defers further proceedings without entering an adjudication of guilty ...."

At hearing on motion to suppress the only witness was Officer Kenneth Wayne King, Sr., Lamar University Police. He said that at about 7:30 p.m., August 5, 1982, he was riding alone on patrol when he saw Appellant driving in a Chevrolet Camaro. He said he stopped Appellant for the traffic offense of displaying expired license plates. This stop was accomplished after the officer turned on the patrol car's overhead lights and hit the siren once. Appellant stopped in the 5100 block of University Drive promptly and without a chase. Appellant got out of his car first and walked back toward the patrol car. The Appellant and the officer met in front of the patrol car. The officer asked Appellant for his driver's license and advised him he was displaying expired plates. The driver's license was apparently valid. Appellant exhibited no unusual behavior. He did not seem nervous or intoxicated. He appeared cooperative.

The question in this case centers upon what happened next. The officer told Appellant to remain at the front of the patrol car and the officer went to the Camaro. "[I]t's, you know, my policy. I always check the interior of the vehicle for my personal safety reasons," King said.

The policeman looked at the Camaro's inspection sticker and found it valid and up to date. The car windows were down. From outside the Camaro he looked inside "for my safety ... [for] other people, you know, contraband." This is the officer's personal policy; it is not the policy of the police department. But the officer apparently anticipated the Appellant re-entering the car and departing in it.

When the officer looked inside the Camaro from a position where he had a right to be, he saw a green leafy substance in the console on the floorboard—marihuana. He saw the contraband in plain view with his naked eye unaided by a flash light. Up to this point no part of the officer's body had intruded into the Camaro. The officer then told Appellant what he had seen and conducted a search of the vehicle's passenger compartment. Between the seat and the console he found a pipe filled with marihuana.

The record demonstrates and substantiates the State's contention that there was no search in this case when the officer first observed the green leafy substance in plain, open view. He identified the green leafy substance as marihuana based on his experience as an officer and his training and studies in the past. We find and conclude:

1. The Appellant was lawfully stopped for a valid traffic offense and the green leafy substance, identified as marihuana, was observed by Officer King (the only witness on the Motion to Suppress) in plain and open view, immediately following the lawful stopping of the car in the street.

2. The contraband—marihuana—was easily visible, in plain and open view, by the naked eye of King, who at the time was in a position outside of the Camaro where he had a right to be.

3. Before and at the time he first observed the contraband, there was no intrusion by King or by any part of his body into the Camaro.

4. When Officer King entered the Camaro he had probable cause to do so because the recognized contraband provided a reasonable and probable basis for his belief that the automobile contained marihuana; a sure and certain belief not being required.

5. The car's mobility and the diminished expectation of privacy which surrounds

the automobile, at least as to the passenger compartment, as well as the totality of the situation, all created "exigent circumstances", making it highly impractical to secure a warrant beforehand; hence, no search warrant was required.

6. Kenneth Wayne King, Sr., was an officer and a member of the Lamar University Patrol Department and it is undisputed that he was in the process of issuing a valid summons or ticket on a traffic violation because Gillard's Camaro was displaying an expired license plate and the sticker on the rear license plate was expired.

7. The marihuana filled pipe was not in a container, either sealed or unsealed. The pipe was resting, unhidden, near the console in the passenger compartment.

Analyzing the totality of the record before us, we find that the officer's actions and the search and seizures were not unreasonable. Hence, *U.S. CONST. amend. IV* was not violated nor was *TEX. CONST., art. I, Sec. 9* (1876), offended. *Adams v. State,* 634 S.W.2d 785 (Tex.App.—Austin 1982, no writ).

In this misdemeanor bench trial *TEX. CODE CRIM.PROC.ANN. art. 1.14* (Vernon 1977) was assiduously and admirably followed when the Appellant, in person and with his attorney present and advising, stated that he understood the nature of the misdemeanor charge against him, the penalty range for the misdemeanor offense, waived trial by jury, waived confrontation of witnesses, waived his right to present witnesses in his behalf; and pleading no contest, submitted his case to the trial court on all issues of law and fact. All of his waivers and plea were fully accepted by the court. The court, after having heard evidence, found that the evidence and record substantiated the Appellant's guilt.

*TEX.CODE CRIM.PROC.ANN. art. 27.02(5)* (Vernon Supp.1982–1983) legislatively mandates that a plea of no contest, or nolo contendere, shall be the same as a plea of guilty in this criminal prosecution. *Fierro v. State,* 437 S.W.2d 833 (Tex.Cr.App. 1969).

A plea of guilty or a plea of nolo contendere, having been voluntarily, freely and understandingly made, entered and accepted, is conclusive as to the Appellant's guilt and waives all non jurisdictional defects including claimed defects or deprivation of all federal constitutional due process rights. *Fierro v. State, supra; Hoskins v. State,* 425 S.W.2d 825 (Tex.Cr.App.1967).

The deferred adjudication order necessarily is AFFIRMED.