**Ricky Brenc ADAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–82–004–CR.**

Court of Appeals of Texas, Austin.

June 2, 1982.

David A. Donohue, Irving, for appellant.

Arthur C. Eads, Dist. Atty., James Russell, Administrative Asst., Belton, for appellee.

POWERS, Justice.

Appellant was indicted for the possession of more than four ounces of marijuana, a controlled substance. The trial court found him guilty, in a trial before the court, based upon his plea of guilty and upon the written statements of witnesses, appellant having agreed to the introduction of these statements into evidence. Punishment was assessed at ten years' imprisonment and a $2,500 fine, the former being suspended and appellant placed on probation for the period of his sentence.

The sole question on appeal is whether the trial court erred in overruling appellant's written motion to suppress evidence of the marijuana seized in a search of his automobile by an officer, incident to

appellant's being stopped for a traffic offense. Appellant's ground of error is reviewable notwithstanding his negotiated plea of guilty, his trial being before the judge without a jury and accompanied by the circumstances necessary to obtain review in such cases, as set out in Tex.Code Crim.P.Ann. art. 44.02 (Vernon 1979) and *Wheeler v. State,* 628 S.W.2d 800 (Tex.Cr. App.1982).

The record reveals that two officers stopped appellant for speeding. On being asked to step outside his automobile, appellant did so. One officer asked to see his driver's license (which appellant presented) while the other examined the exterior of appellant's automobile for such other possible violations as an expired inspection sticker, invalid registration, or a lack of headlights. In so doing, this officer looked inside the automobile and saw on the driver's seat several seeds, some of which were partially burned, which he identified as marijuana seeds. The officer observed no usable quantity of marijuana. On seeing the seeds, however, the officer entered the automobile. There he found in the back seat a styrofoam ice cooler which he opened by raising the lid. The cooler contained nine clear plastic bags of suspected marijuana, for the possession of which appellant was immediately arrested. The substance was shown by stipulated evidence to have been marijuana. The first officer confirmed by his testimony that seeds were on the driver's seat and said he had intended to issue a warning ticket for the speeding violation before the marijuana was discovered.

Appellant's motion to suppress the nine bags of marijuana averred that the search of his automobile was not a lawful search because it was not conducted pursuant to a lawfully-issued search warrant, was not based upon probable cause, did not occur in circumstances which authorized a warrantless search, and no contraband was in plain view. We believe these contentions sufficiently raise the proposition that the evidence was inadmissible under Tex.Code Crim.Pro.Ann. art. 38.23 because the search was in violation of the Constitution of the United States, Amendment IV, and the Constitution of the State of Texas, Art. I, § 9.[1] We reject the State's contention to the contrary.

---

1. Amendment IV to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .

Article I, § 9 of the Constitution of Texas, 1876, provides:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, . . .

Vernon's Ann.Code of Crim.P. art. 38.23 provides:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

The Fourth Amendment does not require search warrants. The presumption that a warrant *is* a prerequisite to a constitutional search under the Fourth Amendment is a judicial rule directed at enforcing what the Amendment does require, namely a reasonable search, or one based upon probable cause.

Automobiles are "effects" within the meaning of that word as it is used in the Fourth Amendment. Hence, automobiles are within the general protection of the constitutional guarantee against unreasonable searches and seizures. Nevertheless, they have long been made subject to special treatment, even to the extent of forgiving the requirement of a search warrant provided the search is shown, after the fact, to have been based upon demonstrable facts which made the search reasonable in the circumstances, in other words, that the officer had a reasonable basis for believing the automobile contained contraband or evidence of a crime *and* "exigent circumstances" made it impracticable to secure a warrant before making the search. Such special treatment rested originally upon the rationale that the automobile's aspect of mobility furnished the "exigent circumstances," in some instances. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Husty v. United States,* 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). More recently, the Supreme Court of the United States relied upon another rationale for the special treatment. This rationale has an entirely different focus: There is no *absolute* privacy interest in an automobile, as indicated by the state's regulation, including registration and licensing, of both automobiles and automobile

The State invites our attention to the opinion of the Supreme Court of the United States in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In that case, the Court attempted to set out workable rules under which officers may apply the principle of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) in making warrantless automobile searches incident to a lawful custodial arrest. (*Chimel* had held that "exigent circumstances" permit an arresting officer, as an incident to the arrest, to search the immediate area without a warrant on the theory that the arrested person might obtain a weapon from, or conceal or destroy incriminating evidence found in, that area.) The Court in *Belton* held: (a) a lawful custodial arrest creates a situation where the arresting officer may conduct a warrantless search of the suspect and the immediately surrounding area; (b) the immediately surrounding area includes the passenger compartment of the automobile and the contents of any container found therein; and (c) the container may be searched whether it is opened or closed, since the justification for the search is not found in the arrested person's privacy interest in the container, but in the proposition that the lawful custodial arrest justifies the officer's infringement of that interest.

■ The principle of the *Belton* decision is not applicable because appellant was not in "custodial arrest" at the time of the search in question, though he was lawfully stopped and detained by the officers for the investigation of a traffic offense which they had observed. *Dillard v. State*, 550 S.W.2d 45 (Tex.Cr.App.1977).[2]

■ Another kind of "exigent circumstance" may arguably authorize a warrantless search, however; that is, the warrantless search of appellant's automobile based upon (a) probable cause that it contained contraband and (b) circumstances where the mobility of the vehicle made it impracticable to secure a warrant. *Carroll v. United States, supra*, n. 1.

■ The present case is, in our view, controlled by the decision of the Court of Criminal Appeals in *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1981), interpreting *Carroll*. In *Gill* the Court pointed out the general principle that "the scope of an automobile search, like any other search, must be strictly tied to and justified by the circumstances occasioning it." The decision involved the warrantless search of a parked automobile following one officer's observation that the driver acted suspiciously and had a syringe and, perhaps, a single marijuana cigarette, which the officer saw from the exterior of the automobile. *See Id*, at 312 (Clinton, J., concurring.) After search-

operators. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). Our Court of Criminal Appeals adopted this rationale, as it had previously adopted the *Carroll* doctrine based upon the mobility aspect of the automobile. *Gill v. State*, 625 S.W.2d 307 (Tex.Cr.App.1981). In *Gill*, the Court generally outlined the quality of the privacy interest which attaches to various parts of an automobile. Thus, two aspects of an automobile, its mobility and the quality of the relevant privacy interest in a particular part of it, enter into a determination of whether a specific warrantless search is reasonable under the Fourth Amendment.

**2.** The officers, having observed the suspected offense, were empowered by Tex.Code Crim. Pro.Ann. art. 14.01(b) to "arrest" appellant for the offense of speeding; and if that arrest were "custodial," presumably under *Belton* they were authorized to search the interior of the automobile and any containers which were not locked.

Article 15.22 of the Code distinguishes between "restraint" and "custody" in its definition of "arrest." We are uncertain of the qualitative differences between "restraint" and "custody" intended by article 14.01(b), but the latter seems to be what the Supreme Court of the United States had in mind in using the term "custodial arrest." "Restraint" implies a lesser form of arrest than does "custody." In either event, the one arrested is not free to leave when he pleases. *Brewster v. State*, 606 S.W.2d 325 (Tex.Cr.App.1980). In the present case, the officer who engaged appellant in conversation testified it was his intention to issue a warning ticket to appellant, with the implication that he would then be free to leave. *See* Tex.Rev.Civ. Stat.Ann. art. 6701d, § 148 (Supp.1981). Discovery of the seeds intervened, and we should think that "restraint" became "custody" when the search led to the discovery of the marijuana bags.

ing the interior of the automobile, the officers expanded the search to the locked trunk of the automobile where they found the evidence relied upon for conviction. We will attempt to apply the Court's holding to the present case, for it relies not upon the rationale of a search incident to a custodial arrest, with the attendant right under *Belton* to search the interior of the automobile, but rather upon a diminished expectation of privacy in the interior of an automobile following a detention which does not amount to a custodial arrest. The Court said:

> Probable cause to search part of a vehicle is not inevitably probable cause to search the entire vehicle ... The reason is that the search and seizure amendments of our constitutions protect peoples [sic] rights to privacy, ... and there are different expectations of privacy in different parts of an automobile. In the exterior of an automobile there is no reasonable expectation of privacy .... In the interior of an automobile there is an expectation of privacy which is somewhat lower than the expectation of privacy in a home or office, 'because [an automobile's] function is transportation and it seldom serves as one's residence or as the repository of personal effects ....' It travels public thoroughfares where both its occupants are in plain view." [citations omitted]
>
> In the trunk of an automobile there is a still greater expectation of privacy. Unlike the exterior or the interior of an automobile, the trunk is not in plain view. It does serve as the repository of personal effects ....
>
> Therefore we hold that the scope of an automobile search, like any other search, must be strictly tied to and justified by the circumstances occasioning it. The existence of probable cause to search the interior of an automobile is not necessarily sufficient to justify the search of the trunk. A search based on probable cause which reasonably tends to support only the inference that contraband or evidence will be found in the passenger compartment is of intolerable intensity and scope

if it is expanded to include a closed trunk. Such an expansion must be justified by specific, articulable facts that give probable cause to believe that contraband or evidence is concealed in the trunk .... This holding comports with the traditional "automobile exception" cases such as *Carroll v. United States* ....

The court's reference to a search of "intolerable intensity and scope" alludes to its citation of *Kremen v. United States*, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957), to the effect that a search reasonable in its inception may become unreasonable, and therefore violative of the Fourth Amendment, by its being expanded in its intensity and scope to a degree violative of that Amendment's guarantee of reasonableness.

 We find the search in the present case reasonable in the circumstances which gave rise to it and in the limits to which it was carried. The one officer saw the marijuana seeds in open view from a place where he had a right to be after the lawful stop and detention of the driver. There was a valid reason for the officer's presence beside the door, from where he could see inside the automobile. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Miller v. State*, 608 S.W.2d 684 (Tex.Cr.App.1980). The officer's seeing the seeds in an automobile stopped on the highway justified his entering the automobile without first obtaining a warrant, once he had probable cause (absolute certainty was not required) to believe that it contained evidence of a crime, that is, a usable quantity of marijuana. *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980); *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Carroll v. United States, supra.* The seeds furnished a reasonable basis for the officer's belief in this instance. (For the purposes of the Controlled Substance Act, the seeds of the plant "cannabis satira L." are specifically included in the definition of the word "marijuana," the possession of which is made criminal if it is knowing or intentional and a "usable quantity" is possessed. Tex.Rev.Civ.Stat.Ann. art. 4476–15, §§ 1.02(17), 4.05.) The issue then reduces to whether the officer had probable

cause, under these cases, to include the ice cooler in his search.[3]

3. In the present case, the requirement of probable cause pertains only to a search sought to be justified on the basis of the *Carroll* doctrine, the "automobile exception" to the general rule that a search warrant is required. Probable cause is not a requirement if the warrantless search is sought to be justified on another exception—that is, the doctrine of *Chimel* which permits a warrantless search of the immediate area on the arrest of a person. The *Belton* case applies the doctrine of *Chimel* in the automobile context, holding that the "immediate area" may include closed containers found in the automobile's interior.

Before the *Carroll* doctrine may be intelligently applied in the present case, some consideration must be given the nature of the "probable cause" which forms one of the bases for the doctrine, the other being circumstances making it impracticable to secure a warrant. "Automobile or no automobile, there must be probable cause for the search." *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).

If there is *probable cause* to believe the automobile contains articles which the officer is entitled to seize as contraband, or if it contains other evidence of a crime, the officer may search the automobile without a warrant when it is not practicable to secure the warrant beforehand, the automobile's mobility making it possible for the vehicle to be moved quickly out of the locality or jurisdiction before a warrant may be issued. In such a case,

> The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the *reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.*" (emphasis added)

*Carroll v. United States, supra; Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The two exceptions have numerous variations, some of which are discussed in the body of this opinion. The parties' briefs in this Court fail, however, to make the basic distinction between the two kinds of searches. *Branch v. State*, 599 S.W.2d 324 (Tex.Cr.App.1980), relied upon by appellant, involves an automobile search, but a search which immediately followed the arrest of the driver. The search of the front seat of the automobile was not within the immediate area of the driver, who was placed by the officers at the rear of the vehicle with his hands on the trunk. Since there was no probable cause relied upon, but only the right to search the immediate area as an incident to the arrest, a warrantless search was improper outside that area.

The State urges the holding in *Belton*, but we refuse to apply that holding to permit a search of the interior of appellant's car without a warrant, it being apparent in the present case that appellant was not under "custodial arrest" at the time, as *Belton* requires.

The majority opinion in *Gill* contains judicial dicta (as opposed to *obiter dicta*) reflecting a conscious attempt to delineate the quality of the privacy expectations which one may have with respect to various parts of an automobile; and therefore exhibits a conscious effort to clarify the vexing problem of applying the *Carroll* doctrine in searches *not* incident to an arrest. *Gill* acknowledges that absent the arrest of the driver, no search of the automobile is permissible without probable cause, which is "the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Carroll v. United States, supra.* Moreover, even if probable cause exists to enter the automobile to seize contraband or evidence, that fact alone does not *inevitably* furnish probable cause to search all parts of the automobile as well. It may or it may not, depending upon a correlation between the quality of the privacy expectation which one is entitled to have in the area of the car into which the officer desires to expand the search, and the existence of "specific, articulable facts which give probable cause to believe that contraband or evidence" will be found in that part of the car.

The concurring opinion in *Gill* emphasizes the limitation placed upon the search by virtue of its being only a search incident to an arrest—that is, its limitation to the immediate area. There was a question in that case of precisely when the "arrest" of the driver was effectuated. Nevertheless, the concurring opinion also concludes by the statement that no *probable cause* justified a search of the trunk of the car, an entirely different basis for the warrantless search of an automobile, as mentioned above. The majority opinion concludes that the facts "do not establish probable cause to believe that contraband or evidence was in the trunk." Taken together, both opinions support the proposition that *objective* reasonableness, under all the facts, is required before a warrantless search may be initiated or expanded under the probable cause basis for the warrantless search of an automobile. *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978).

A similar case is *De La Rosa v. State*, 627 S.W.2d 207 (Tex.App.—San Antonio 1981) where the officer's testimony was to the effect that he smelled a marijuana odor and saw marijuana seeds on the front seat of an automobile which he had stopped for a valid reason. Without a warrant, he opened the door and pushed forward the front seat, exposing a closed compartment under the seat. Opening it, he found 19 "bricks" of marijuana. The

Almost the same issue was presented in *Robbins v. California*, 453 U.S. 420, 101

S.Ct. 2841, 69 L.Ed.2d 744 (1981) where four justices of the Supreme Court of the United States expressed the view that a closed opaque container which does not clearly announce its contents may not be opened without a warrant, even when found during the course of a lawful and warrantless search of the interior of an automobile stopped for a traffic offense. A majority was obtained for reversal of the judgment of a California Court of Appeal when Chief Justice Burger simply concurred in the re-

sult and Justice Powell concurred on the basis that the container was wrapped and sealed in a manner which manifested the driver's expectation of privacy in its contents. Justice Powell's opinion constitutes the holding of the Supreme Court in the case and provides the governing standard here,[4] along with the decision of the Court of Criminal Appeals in *Gill*.

 We hold that the officer was not required to obtain a search warrant before

court held he had probable cause to make the search without a warrant, based upon the reasonableness of the officer's belief that the contents of the car contained marijuana, coupled with the "exigent circumstances" presented by the car being stopped on the roadside. The court rejected the State's contention that *additional* quantities of marijuana were properly admitted into evidence, where that marijuana was found the next morning following impoundment of the vehicle. That marijuana was also the consequence of a warrantless search of a portion of the car, conducted after an officer looking through a hole saw "something shiny" resembling the tin foil in which the original 19 "bricks" had been wrapped. The basis for excluding the latter quantity of marijuana was that the *Carroll* doctrine was no longer applicable, the automobile being in the custody of the officers and not being subject to being driven away before a warrant could practicably be obtained.

4. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five justices [when the case is heard by the full Court], 'the holding of the Court may be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds....'" *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977) [analyzing the obscenity standards set forth in *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), citing *Gregg v. Georgia*, 428 U.S. 153, 169, n. 15, 96 S.Ct. 2909, 2923, n. 15, 49 L.Ed.2d 859 (1976)].

The plurality opinion in *Robbins*, written by Justice Stewart and joined by Justices Brennan, White and Marshall, takes the position that a closed, opaque container found during the lawful search of an automobile, may not be opened by the searching officer when the container does not, by its distinctive configuration, transparency, or otherwise, so clearly announce its contents that they are obvious to an observer. A less inclusive and narrower position was taken in Justice Powell's concurring opinion. He disagreed with the plurality's mechanical test, which he felt required a warrant to be obtained before opening almost any

closed container found in the lawful search of an automobile, even "insubstantial containers in which no one had a reasonable expectation of privacy," saying:

The plurality's approach strains the rationales of our prior cases and imposes substantial burdens on law enforcement without vindicating any significant values of privacy. I nevertheless concur in the judgment *because the manner in which the package at issue was carefully wrapped and sealed evidenced petitioner's expectation of privacy in its contents.* As we have stressed in prior decisions, a central purpose of the Fourth Amendment is to safeguard reasonable expectations of privacy. (emphasis added)

Subsequently in his opinion, Justice Powell criticized the plurality opinion with respect to the proposition that it did "not even purport to protect any privacy interest," and on the additional ground that

it would impose substantial new burdens on law enforcement. Confronted with a cigar box or a Dixie cup in the course of a probable cause search of an automobile for narcotics, the conscientious policeman would be required to take the object to a magistrate, fill out the appropriate forms, await the decision, and finally obtain the warrant. Suspects or vehicles normally will be detained while the warrant is sought. This process may take hours, removing the officer from his normal police duties. Expenditure of such time and effort, drawn from the public's limited resources for detecting or preventing crimes, is justified when it protects an individual's reasonable privacy interests. In my view, the plurality's requirement cannot be so justified. The aggregate burden of procuring warrants whenever an officer has probable cause to search the most trivial container may be heavy and will not be compensated by the advancement of important Fourth Amendment values....

Being of the opinion that almost all closed opaque containers are not within the scope of a lawful warrantless search of the automobile's passenger compartment, the plurality would obviously agree with Justice Powell that those closed opaque containers marked with the indi-

lifting the lid of the ordinary closed ice cooler found on the back seat of the appellant's automobile. Essential to our holding are the following conclusions based upon *Robbins* and *Gill* :

1. Appellant was lawfully stopped by the officers for a traffic offense and the marijuana seeds, some partially burned, were observed by one of the officers in open view from a position outside the automobile where he had a right to be under *Coolidge* and *Miller, supra.*

2. The officer who entered the automobile had probable cause to do so because the partially-burned marijuana seeds provided a reasonable basis for his belief that the automobile contained marijuana, a certainty of belief not being required. No warrant was required because the search was made immediately following a lawful stop of the car on the roadside, and was therefore within the "exigent circumstances" of the *Carroll* doctrine, making it impracticable to secure a warrant beforehand.

3. The lifting of the lid of the ice cooler was not an *expansion* of the original search but a part of it because (a) the cooler was resting unconcealed on the back seat of the passenger compartment, a part of the automobile having a diminished expectation of privacy under *Gill,* that is, a privacy interest greater than the car's exterior but less than other parts, such as a locked trunk; (b) the ice cooler was not locked, wrapped, or sealed or otherwise characterized by any indicia of a privacy expectation; [5] (c) the contents of the cooler could be examined simply by lifting the lid and without damage to the cooler or any part of the car; (d) an ice cooler is not normally a container utilized for storing things in which one would have a privacy interest, but it is an article having the capacity to hold marijuana.[6]

4. Not being an expansion of the original search, the officer's examination of the ice cooler was not required to be supported by other specific, articulable facts giving rise to an independent reasonable

---

cia of a privacy expectation are not so included. The reverse may not be said, however, as Justice Powell's opinion makes abundantly clear; hence, the basis for his decision is the narrower ground and standard which we are required to apply.

5. Compare *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979) and *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the former dealing with an unlocked, but closed, suitcase found in the closed trunk of a taxicab, the latter dealing with a locked footlocker found in an open automobile trunk. Both vehicles were stopped on the street. Both articles of luggage contained marijuana, and the officers in each instance a reasonable basis for believing the luggage contained the drug; i.e., probable cause existed for a search of the container.
In *Sanders,* the majority reasoned that the *Carroll* doctrine did not extend to luggage in the control of the officers. Conceding that the officers had probable cause to take the suitcase from the trunk of the taxicab, the Court held that the suitcase thus came into the officers' control, *Carroll* no longer justified a warrantless search of the suitcase, and a warrant was required before the suitcase was opened.
In *Chadwick,* the majority noted that the *Carroll* doctrine was founded not only upon the "exigent circumstances" imposed by an automobile's mobility, but also upon "the diminish-

ed expectation of privacy which surrounds the automobile," as exemplified by the State's regulation of motor vehicles and their operators. Neither mobility nor diminished privacy expectations are found in luggage and *Carroll* therefore did not authorize a warrantless search of the footlocker; and because the officers had the locker in their control for over an hour, they were required to obtain a warrant before opening it.
*Robbins* and *Belton* followed *Sanders* and *Chadwick* in attempting to spell out the rules that govern the search of containers found in automobiles. The holding in *Robbins,* applicable to searches based upon probable cause *without* an arrest, is evidently being reconsidered by the Supreme Court of the United States. *See,* 50 U.S.L.W. 3707–08 (March 9, 1982).

6. The object for which the officer has probable cause to look has an important bearing on whether the search is reasonable. Having probable cause to search the automobile for a stolen television set, an officer would nevertheless not be reasonable if he looked for it in a wallet found on the front seat. To do so would constitute an expansion of the search—indeed, a new and different search entirely and one requiring probable cause to make it lawful.

belief that marijuana would be found in the cooler.

Concluding, therefore, that the examination of the ice cooler was "strictly tied to and justified by the circumstances," when the ice cooler was not marked by any indicia of a privacy expectation in its contents, we affirm the judgment of the trial court.

PHILLIPS, C. J., not sitting.