# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00026-CR

**Levi Barriere, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-08-206245, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Levi Barriere of possessing a controlled substance and sentenced him to seven years' imprisonment. On appeal, Barriere argues that the trial court should have suppressed the State's evidence because the search that yielded it was illegal. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 20, 2008, a group of Austin Police Department (APD) officers in an unmarked van were patrolling Mason Manor, an apartment complex located in what APD considers a high-drug-crime area. The officers, who were members of a tactical drug-interdiction unit, observed a group of 15 to 20 people gathered in Mason Manor's parking lot. Two of the officers, James Williams and Leif Guevara, testified that they saw members of the group engage in what

appeared to be a hand-to-hand drug transaction.[1]  Accordingly, the officers jumped out of their van and approached the group.  Most of the group fled, but Barriere and one other person did not.

While several officers pursued the people who ran, Officer Williams approached Barriere.[2]  Officer Williams testified that the area around Barriere smelled of burnt marijuana, though he could not pinpoint Barriere as the source of the smell.  Officer Williams testified that he engaged Barriere in a conversation during which Barriere said he had nothing to hide, volunteered to be searched, turned around on his own, and put his hands in the air.[3]  Officer Williams also testified that at that point Barriere was not being detained and was free to leave.

Officer Williams searched Barriere and found approximately $8,000 in his pockets, divided into $1,000 bundles.  Williams testified that his training and experience suggested that carrying large amounts of money this way was consistent with drug-dealing.  Coupled with the surrounding odor of marijuana and the fact that he was in a high-drug-crime area, Williams testified that he became suspicious Barriere was a drug-dealer.  Accordingly, Williams testified, he "detained" Barriere at that point for further investigation (i.e., would no longer have let him simply walk away).  Williams asked Barriere to remove his shoes and socks, both so that Williams could search them for additional evidence and so that Barriere would have a harder time running if he tried to flee.

---

[1]  Williams testified that he saw two men engage in a drug transaction, whereas Guevara testified that he saw a man and a woman engage in a drug transaction.  The officers agreed, however, that Barriere was not involved in the transaction(s) they witnessed.

[2]  Officer Guevara approached the other individual who did not flee, questioned him, and released him.

[3]  As we discuss below, Barriere testified otherwise at a suppression hearing.

Williams found no additional evidence in Barriere's shoes and socks. In addition to money, though, Williams had also found car keys in one of Barriere's pockets. Williams asked Barriere where his car was, and Barriere pointed to a GMC Suburban parked 20 to 25 feet from where they stood. Williams asked Barriere for permission to search the car, and Barriere refused. Williams testified that Barriere became nervous when asked about the car, which increased Williams's suspicion.

Williams testified that he walked over to the car and peered into the open passenger-side window without "breaking the plane" of the car. Williams testified that he saw marijuana seeds and the remnants of a "blunt"[4] wrapper in plain view inside the car. He also testified that he smelled the odor of burnt marijuana emanating from the car. Williams opened the passenger-side door and, with the assistance of Officer Guevara, searched the car. He found a bag containing approximately 20 rocks of crack cocaine under the passenger-side seat.

Barriere was arrested and charged with possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112 (West 2010). He pleaded not guilty and proceeded to trial. Before the State called its first witness, Barriere moved to suppress all the evidence that had resulted from his encounter with the police. The court held a suppression hearing at which Williams testified to the above facts. Barriere also testified at the hearing, claiming that he did not consent to a body search by Officer Williams and did not feel free to leave even before he was officially "detained." At the conclusion of the hearing, the court stated:

---

[4] A "blunt" is a kind of cigar the innards of which can be removed and replaced with marijuana. Officer Williams testified that blunts are often used for smoking marijuana and that he therefore considers blunts to be "narcotics paraphernalia."

the Court finds that Officer Williams was credible; that upon his initial encounter with Mr. Barriere that Mr. Barriere consented to the search of his person; that during that search, and maybe even shortly before—but there was a smell of marijuana that Officer Williams thought was coming either from the person of Mr. Barriere or his associate; that the search of his person resulted in $8,000 in cash bundled in approximately $1,000 bundles in virtually every pocket, apparently, that Mr. Barriere had; that once the money was discovered, a detention occurred and Mr. Barriere was no longer free to leave.

Then the question becomes whether or not that detention was lawful—that continued detention of Mr. Barriere was lawful, and I find that it was, because I believe that Officer Williams had specific articulable facts to believe that a crime had been or was being committed, that being the crime of possession of a controlled substance, and the specific articulable facts were the area—this was a high-crime area known for narcotics transactions, the marijuana smell about the person of Mr. Barriere and/or his associate, the $8,000 in cash, which Officer Williams testified was consistent with drug dealing.

As a result of the detention, Officer Williams was uncertain of what happened next, but I find that following—that after he had, in fact, been detained, Mr. Williams asked Mr. Barriere about his car. And so as a direct result of that detention, Mr. Barriere said, that's my car. So those are the—that is the fruit of the detention.

I find that—all right—following—when he said, that's my car, that Officer Williams went over and looked in the car, and as a result of plain view and plain smell—that being the burnt marijuana—that he had probable cause to search the vehicle, and the probable cause to search the vehicle led to the discovery of the cocaine at issue in this case.

Accordingly, the court denied Barriere's motion to suppress.

The court proceeded with the trial, allowing the State to introduce its evidence. Officer Williams again testified to the above facts. He also testified that approximately 7 to 10 minutes elapsed between the time he first approached Barriere and the time he searched Barriere's car. Officer Guevara gave conflicting testimony, stating that approximately 15 to 20 minutes elapsed. After Officer Guevara testified, Barriere renewed his motion to suppress on the basis that

4

Officer Guevara's testimony showed Barriere had been detained for an unreasonably long time. The court once again denied his motion.

At the conclusion of the trial, the jury convicted Barriere of the lesser-included offense of possession of a controlled substance without intent to deliver. Barriere appeals.

## STANDARD OF REVIEW

"At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses and their testimony." *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Thus, in reviewing a trial court's decision on a motion to suppress, we give "almost total deference to a trial court's determination of historical facts." *Id*. On the other hand, we review de novo the court's application of the law. *Id*. On any fact issue for which the trial court does not make an explicit finding, we review the evidence in the light most favorable to the court's ruling. *Id*.

## DISCUSSION

Barriere enumerates only one point of error: "Appellant's detention was not supported by reasonable suspicion, and the search of his vehicle was unconstitutional under [*Arizona v. Gant*]," 556 U.S. __, 129 S. Ct. 1710 (2009). In parsing Barriere's brief, though, we count seven distinct arguments as to why the trial court should have granted his motion to suppress: (1) Officer Williams was not justified in initiating a search of Barriere, as Barriere did not consent to being searched and had not been a participant in the hand-to-hand drug transaction Officer Williams observed; (2) even if Barriere did consent to being searched, the search was not reasonably related

5

in scope to the circumstances that justified it in the first place (namely, the observed drug transaction); (3) the fruits of the search did not create a reasonable suspicion that Barriere had committed or was about to commit a crime, so Williams was unjustified in further detaining Barriere; (4) the detention was unreasonably long, making it effectively a warrantless arrest, and it exceeded the scope of what Barriere allegedly consented to; (5) because the detention was effectively a warrantless arrest, Barriere should have been given *Miranda* warnings; (6) Barriere's identification of his car occurred while Barriere was being illegally detained, so it was "fruit of the poisonous tree"; and (7) the search of Barriere's car was illegal under *Arizona v. Gant* because Barriere was effectively under arrest and could not access the car, or, alternatively, if Barriere was not under arrest, then the search of his car was illegal regardless of whether he could access it. We will address these arguments in turn.

### Whether the Initial Body Search of Barriere Was Justified

Barriere argues that the initial search of his person was unjustified because he did not participate in the hand-to-hand drug transaction that Officer Williams witnessed. The State argues that the search was proper because Barriere consented to it.

The parties agree that after witnessing other people conduct a drug transaction, Officer Williams approached Barriere and engaged him in conversation. Doing so was not improper. *See State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002) ("Police officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place [and] by asking him if he is willing to answer some questions . . . . [I]n the case of an encounter, a police officer may stop and ask questions of a person without reasonable suspicion.") (internal

6

quotation marks omitted). Officer Williams testified that during the conversation, Barriere consented to being searched. Barriere testified otherwise. The trial court explicitly found Officer Williams's testimony credible. We must defer to this finding. *Maxwell*, 73 S.W.3d at 281. And because we must defer to this finding, we cannot say that Officer Williams's initial search of Barriere was improper. *See Brimage v. State*, 918 S.W.2d 466, 480 (Tex. Crim. App. 1996) (warrantless search is legal if subject voluntarily consents). Barriere's first argument is without merit.

### *Whether the Search of Barriere Was Reasonably Related in Scope to the Circumstances that Justified It in the First Place*

Next, Barriere argues that even if he did consent to being searched, the search was not reasonably related in scope to the circumstances that justified it in the first place (namely, the observed drug transaction). Barriere draws this reasonable-scope requirement from *Terry v. Ohio*, 392 U.S. 1, 29 (1968), but that case in inapplicable here; it concerned a nonconsensual frisk for weapons, *see id*., whereas this case concerns a consensual search for drugs. Barriere's second argument is without merit.

### *Whether Officer Williams Had Reasonable Suspicion to Detain Barriere*

Barriere next argues that because the search of his person did not yield evidence of a crime, Officer Williams lacked reasonable suspicion to detain him further. *See Crain v. State*, No. PD-1262-09, 2010 Tex. Crim. App. LEXIS 794, at *20 (Tex. Crim. App. June 30, 2010) ("For government officials to be able to conduct investigative detentions, they must have reasonable suspicion founded on specific, articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon

7

will be engaged in criminal activity."). Here, Officer Williams testified that his reasonable suspicion was founded on three things: (1) the high-drug-crime area in which he encountered Barriere; (2) the smell of marijuana surrounding Barriere; and (3) the roughly $8,000 in cash in Barriere's pockets.

Barriere notes that Officer Williams could not pinpoint him as the source of the marijuana smell. He then argues that the remaining facts of the situation—the high-drug crime area and the $8,000 in cash—could not create reasonable suspicion because they were not inherently criminal. The court of criminal appeals has specifically rejected this reasoning. *See Curtis v. State*, 238 S.W.3d 376, 380 (Tex. Crim. App. 2007) ("[T]here may be instances when a person's conduct[,] viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion.") (internal quotation marks omitted). What matters in terms of reasonable suspicion is the totality of the circumstances, including activity that is potentially innocent. *See id*. Significantly, Officer Williams testified that in his experience, drug dealers often carry large amounts of cash in discrete bundles. *See id*. (emphasizing significance of officer's experience in evaluating totality of circumstances). Coupled with the other facts of the situation, we cannot say that Officer Williams lacked reasonable suspicion to detain Barriere further. Barriere's third argument is without merit.

### *Whether Barriere's Detention Was Excessively Long and Overly Broad in Scope*

Barriere next argues that his detention lasted too long and was too broad even if initially justified. *See Florida v. Royer*, 460 U.S. 491, 500 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably

8

available to verify or dispel the officer's suspicion in a short period of time."). He seems to base the duration element of this argument on testimony that Officer Williams's encounter with Barriere lasted 15 to 20 minutes, and he seems to base the scope element of this argument on the fact that Officer Williams ordered Barriere to remove his shoes.

Concerning the duration argument, it is true that Officer Guevara estimated that Officer Williams spoke with Barriere for a total of 15 to 20 minutes. On the other hand, Officer Williams estimated that he spoke with Barriere for a total of only 7 to 10 minutes. Even if Guevara was correct, though, the first part of Williams's and Barriere's conversation was not a detention; rather, as Officer Williams testified, Barriere was not detained (i.e., was free to leave) until Williams found the money in his pockets. Thus, Barriere's "detention" lasted for some time less than 15 to 20 minutes.

In any event, courts have declined to place rigid time limits on investigative detentions. *See, e.g.*, *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985) (declining to establish per-se rule that 20-minute detention is too long); *Kothe v. State*, 152 S.W.3d 54, 64 (Tex. Crim. App. 2004) (noting that United States Supreme Court "has expressly rejected placing any rigid time limitations on *Terry* stops"). Instead, what matters is "'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *Kothe*, 152 S.W.3d at 64 (quoting *Sharpe*, 470 U.S. at 685-86).

Officer Williams testified that after he found the money and detained Barriere, he (1) asked Barriere additional questions, (2) searched Barriere's shoes, (3) called his supervisor to

9

assess the situation, and (4) asked Barriere about his car. Williams testified that Barriere's nervousness in response to the latter questions prompted Williams to approach the car and peer through its window. Officer Williams's testimony suggests that he investigated diligently upon detaining Barriere, and the record contains no evidence to the contrary.

Regarding Barriere's argument that Officer Williams's search was overly broad, Barriere seems to base this argument on the fact that Williams ordered Barriere to remove his shoes and socks. Williams testified, though, that in his experience drug dealers often conceal crack cocaine in their shoes or socks. Morever, Barriere had not revoked his earlier consent to being searched. Thus, we cannot say that ordering Barriere to remove his shoes and socks was beyond the scope of a reasonable search for evidence of drug-dealing. *Cf. Champenois v. State*, 874 S.W.2d 254, 259 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (search of appellant's shoes was reasonable because appellant consented to search). Barriere's fourth argument is without merit.

### *Whether Barriere's Detention was Effectively a Warrantless Arrest Requiring* **Miranda** *Warnings*

Barriere next argues that the duration and scope of his detention effectively rendered the detention a warrantless arrest, so Officer Williams's failure to give him *Miranda* warnings means that the fruits of the detention (i.e., his statement identifying his car; the drugs found in his car) must be suppressed. *See Miranda v. Arizona*, 384 U.S. 436, 471 (1966).

An "arrest" generally occurs when a person's liberty of movement is restricted or restrained by a police officer. *See* Tex. Crim. Proc. Code Ann. art. 15.22 (West 2005); *Medford v. State*, 13 S.W.3d 769, 772-73 (Tex. Crim. App. 2000). A stop is not an "arrest," however, but is instead an "investigative detention," when a police officer temporarily detains a person reasonably

10

suspected of criminal activity to garner more information. *See Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).

The distinction between arrests and investigative detentions rests on a fact-specific inquiry. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995); *Akins v. State*, 202 S.W.3d 879, 885 (Tex. App.—Fort Worth 2006, pet. ref'd). For purposes of constitutional analysis, both investigative detentions and arrests are seizures. *Akins*, 202 S.W.3d at 885. The differences between the two are the degrees of intrusion involved and the different legal justifications required of each. *Id*. Whether a seizure is an arrest or an investigative detention depends on the reasonableness of the intrusion under all of the facts. *Id*. (citing *Rhodes v. State*, 913 S.W.2d 242, 247 (Tex. App.—Fort Worth 1995), *aff'd*, 945 S.W.2d 115 (Tex. Crim. App. 1997), *cert. denied*, 522 U.S. 894 (1997)). "The nature of the crime under investigation, the behavior of the individual, the degree of suspicion, the location of the stop, the time of day, and the officer's testimony concerning whether the defendant was free to leave the scene are all factors that bear on the issue." *Id*. (citing, inter alia, *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000)).

In reviewing whether a seizure is an arrest or a detention, we also examine the degree of force used to effect the seizure. *Id* at 886. In an investigative-detention situation, officers may use such force as is reasonably necessary to effect the goal of the stop. *Id*.; *see also Rhodes*, 945 S.W.2d at 117. Additionally, we look to see if an investigation was actually undertaken. *See Burkes v. State*, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991). If one was not, then the detention cannot be considered investigatory and rises to the level of an arrest. *Akins*, 202 S.W.3d at 886.

11

Here, we conclude that Williams's detention of Barriere was a detention, not an arrest. The degree of intrusion was minimal; Williams simply asked Barriere additional questions and ordered him to remove his shoes and socks. Moreover, Williams did not use force; even though Williams testified that he would not have let Barriere walk away once he found the money on him, Williams did not handcuff Barriere, otherwise restrain him, or actually tell him that he was not free to leave. Futhermore, Williams actually used the detention to investigate—he questioned Barriere and searched his shoes and socks—and appears to have done so expeditiously. Finally, Williams testified that if his investigation had not ultimately yielded evidence of a crime (i.e., the drugs in Barriere's car), he would have let Barriere go. This testimony, which the trial court found credible, strongly suggests that Barriere was detained rather than arrested.

In sum, because Williams's detention of Barriere was not effectively a warrantless arrest, Williams was not required to administer *Miranda* warnings. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Barriere's fifth argument is without merit.

### *Whether Barriere's Identification of His Car Was "Fruit of the Poisonous Tree"*

Barriere next argues that because his detention and questioning were illegal, the court should have suppressed his statement identifying his car. We have just explained why the detention and questioning were constitutionally permissible. Thus, the trial court did not err by refusing to suppress the identifying statement. Barriere's sixth argument is without merit.

### *Whether the Search of Barriere's Car Was Illegal*

Finally, Barriere argues that that search of his car was illegal. First, he argues that it was illegal under *Arizona v. Gant*, 556 U.S. __, 129 S. Ct. 1710, which concerns vehicle searches

12

incident to arrest. As we have already explained, though, Barriere was not under arrest. Thus, *Gant* is inapplicable.

Second, Barriere argues that the search of his car was illegal even if he was not under arrest. He seems to base this argument on the fact that Officer Williams only knew to inspect the car because Barriere identified it during questioning. While this argument might prevail if that questioning had been illegal, we have already explained why it was not. Thus, Barriere's identification of his car did not taint the resulting evidence.

After asking Barriere to identify his car, Williams walked over to the car and looked in the window. He testified that, after he saw marijuana seeds and drug paraphernalia in plain sight, he searched the car, finding crack cocaine under the passenger seat. Officer Williams did not obtain a warrant before searching the car. The question, then, is whether he had probable cause to conduct a warrantless search. *See United States v. Ross*, 456 U.S. 798, 799 (1982) (police may conduct warrantless search of car if they have probable cause to believe it contains contraband). The trial court correctly concluded that he did. *See Miller v. State*, 608 S.W.2d 684, 685 (Tex. Crim. App. 1980) (officer had probable cause to conduct warrantless search after stopping defendant for traffic violation and discovering odor of marijuana and marijuana seeds in his car); *Adams v. State*, 634 S.W.2d 785, 793 (Tex. App.—Austin 1982, no pet.) (officer had probable cause to conduct warrantless vehicle search because he saw marijuana remnants on seat). Barriere's seventh argument is without merit.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   August 26, 2010

Do Not Publish

14