(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-263-CR

DEWAYNE H. AKINS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I. 
Introduction 

Appellant Dewayne H. Akins was convicted of possession with intent to deliver a controlled substance.  The trial court sentenced him to nine years’ confinement.  Akins contends that the trial court erred by admitting evidence obtained as the result of an illegal arrest.  We affirm.

II. 
Background Facts

On December 15, 2004, Stanley Davis, an investigator in the narcotics division of the Mansfield Police Department, received a tip from a confidential informant.  The informant told Davis that she had seen Akins in possession of methamphetamine the previous day, and that just prior to calling the police, she had spoken to Akins again and confirmed that Akins still had  methamphetamine with him.  The informant also provided Davis with information about Akins’s present location.  She said that Akins could be found at a convenience store located at 8475 Mansfield Highway in Arlington, Texas. Within an hour of receiving the tip,  Davis and three other investigators drove to the convenience store and set up surveillance of Akins.  The investigators observed Akins talking with another man as he exited the gas station.  When Akins entered his vehicle, the police blocked it from behind with one of their cars.  The investigators then approached Akins with their weapons drawn, placed him on the ground, and handcuffed him.  Davis testified that Akins was not free to leave.  One of the investigators asked Akins if he had any methamphetamine in his possession.  After Akins answered that he had methamphetamine in his pocket, the investigator reached into Akins’s pocket and removed the drug.  The investigators did not read Akins his 
Miranda v. Arizona
(footnote: 1) rights before they questioned him.

Prior to trial, Akins filed a motion to suppress the statement he made as a result of the investigator’s questioning as well as the methamphetamine seized from his pocket.  A hearing was held on the motion, and Davis testified to the occurrences discussed above.  The trial court subsequently denied Akins’s  motion.

III. 
Motion to Suppress

Because Akins’s six points essentially raise the same issue and are combined in Akins’s brief, we too will address all points together.  Akins argues that the trial court erred by failing to exclude the statement he made to the police admitting that he was in possession of methamphetamine and the methamphetamine found in his pocket because this evidence was obtained as the result of an illegal arrest.  Specifically, Akins argues that the arrest was illegal because the police did not have a warrant and the arrest did not fall within one of the exceptions to the warrant requirement as set forth in chapter 14 of the code of criminal procedure.  However, if we hold that the arrest was legal, then in the alternative, Akins argues that the evidence at issue was inadmissible because it was obtained as the result of custodial interrogation after the police failed to apprise him of his
 Miranda 
rights.  

A. Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

When reviewing a trial court’s ruling on a mixed question of law and fact, the court of appeals may review de novo the trial court’s application of the law of search and seizure to the facts of the case.  
Estrada
, 154 S.W.3d at 607.  When there are no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court’s ruling.  
Id
.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

B. The Arrest

Akins argues that his arrest was illegal because it was made without a warrant and without the benefit of one of the exceptions to the warrant requirement as set out in chapter 14 of the code of criminal procedure.
  Tex. Code Crim. Proc. Ann
. §§ 14.01-.04 (Vernon 2005 & Supp. 2006-07).  He contends that, therefore, the evidence obtained as a result of the arrest should have been suppressed.  In its brief, the State concedes that Akins was arrested without a warrant when the police handcuffed Akins, pointed their guns at him, placed him on the ground, and blocked his car in the parking lot.
(footnote: 2)  We hold that the police arrested Akins when they initially approached him and restrained him. 

1.
 
Arrest v. Investigative Detention

An arrest occurs when a person’s liberty of movement is restricted or restrained by an officer or person executing a warrant of arrest or without a warrant.
  Tex. Code Crim. Proc. Ann
. art. 15.22 (Vernon 2005); 
Medford v. State
, 13 S.W.3d 769, 772-73 (Tex. Crim. App. 2000); 
Amores v. State
, 816 S.W.2d 407, 411 (Tex. Crim. App. 1991).  However, a stop is deemed an investigative detention when a police officer detains a person reasonably suspected of criminal activity to determine his identity or to momentarily maintain the status quo to garner more information.  
Hoag v. State
, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).  An investigative detention must last no longer than necessary to effectuate the purpose of the stop and must involve actual investigation.  
See Davis v. State
, 947 S.W.2d 240, 244-45 (Tex. Crim. App. 1997).  

Distinguishing between the two types of seizures can be difficult, particularly because the distinction rests on a fact-specific inquiry rather than clearly delineated criteria.  
Johnson v. State
, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995);
 Zayas v. State
, 972 S.W.2d 779, 789 (Tex. App.—Corpus Christi 1998, pet. ref’d).  For purposes of constitutional analysis, both investigative detentions and arrests are seizures of a citizen by law enforcement officers.  
Zayas
, 972 S.W.2d at 789.
  The differences between the two are the degrees of intrusion involved and the different legal justifications required of each.  
Id
.  
Whether a seizure is an arrest or an investigative detention depends on the reasonableness of the intrusion under all of the facts.  
See Rhodes v. State
, 913 S.W.2d 242, 247 (Tex. App.—Fort Worth 1995), 
aff’d
, 945 S.W.2d 115 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 894 (1997).  The nature of the crime under investigation, the behavior of the individual, the degree of suspicion, the location of the stop, the time of day, and the officer’s testimony concerning whether the defendant was free to leave the scene are all factors that bear on the issue.  
See
 
Illinois v. Wardlow
, 528 U.S. 119, 124-25, 120 S. Ct. 673, 676 (2000); 
see also 
4 
Wayne R. LaFave
, 
Search and Seizure 
§ 9.2(d) (3d ed. 1996).  

A 
reviewing court should also examine the degree of force used to effect the seizure.  In an investigative detention situation, officers may use such force as is reasonably necessary to effect the goal of the stop.  For example, there is no bright-line rule that handcuffing a suspect always constitutes an arrest.  
See Rhodes
, 945 S.W.2d at 118.  Handcuffing is not ordinarily proper in a mere investigative detention, but it may be resorted to in special circumstances, such as when necessary to maintain officer safety or to thwart the suspect’s attempt to frustrate further inquiry.  
Id.
 at 117.  However, if the force utilized exceeds the goal of the stop, such force may transform an investigative stop into an arrest.  
See, e.g., State v. Moore
, 25 S.W.3d 383, 385-86 (Tex. App.—Austin 2000, no pet.) (holding that although officer possessed reasonable, articulable facts justifying an investigative stop, handcuffing of suspect constituted excessive force under the circumstances and transformed detention into an arrest); 
Gordon v. State
, 4 S.W.3d 32, 37 (Tex. App.—El Paso 1999, no pet.) (holding that in the absence of any proof in the record to demonstrate the necessity for the officer’s actions, what may have been a valid investigative detention at the outset became an arrest); 
Flores v. State
, 895 S.W.2d 435, 441 (Tex. App.—San Antonio 1995, no pet.) (holding that initial detention of defendant was arrest rather than mere investigative detention because defendant was forced to exit car at gunpoint, assume a spread-eagle position with his hands on roof of his car, and officer testified that defendant was not free to leave); 
compare Rhodes, 
945 S.W.2d at 117-18 (holding that officer’s handcuffing of two men was reasonable and did not transform investigative detention into arrest when officers responded to report of a burglary in progress at 9:45 p.m. and found two men at the address in question and officer testified that he did this for his own protection “[d]ue to the nature of the call and the way they were acting scared like maybe they had been caught at something, and I was alone, and two of them, and they [were] both bigger than I was”)
; Goldberg v. State,
 95 S.W.3d 345, 360 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d), 
cert. denied
, 540 U.S. 1190 (2004) (holding that it was reasonable, in light of fact that a brutal murder had just occurred, for police officer to handcuff defendant for officer’s own safety while attempting to ascertain whether defendant who had been identified as person driving get away car, had, in fact, been driving that particular car that day)
;
 
Nargi v. State,
 895 S.W.2d 820, 823 (Tex. App.—Houston [14th Dist.] 1995) 
pet. dism’d, improvidently granted
, 922 S.W.2d 180 (Tex. Crim. App. 1996) (holding that handcuffing of defendant during investigatory stop did not transform stop into arrest; potentially dangerous behavior displayed by defendant in speeding and running two red lights and defendant’s anxious and excited demeanor supported reasonable inference that police officer needed to obtain control over defendant to question him safely).

Additionally, a reviewing court must look to see if an investigation was actually undertaken.  
Burkes v. State
, 830 S.W.2d 922, 925 (Tex. Crim. App. 1991).  An investigative detention im
plies that the obtrusive act is for the purpose of actually investigating. 
 Id.
  Therefore, when a reviewing court can find that no investigative questioning occurred, the detention cannot be considered investigatory and rises to the level of an arrest. 
 Id
.  

We believe that the case of 
Taylor v. State 
from this court is a “spotted dog” or 
“white horse case” in resolving this issue.
(footnote: 3) 
 
874 S.W.2d 362 (Tex. App.—Fort Worth 1994, pet. ref’d).  Based on a tip from an informant, police officers believed that Taylor was in possession of methamphetamine.  
Id
. at 363.  As a result of the tip, police officers drove to a carwash where they found Taylor.  
Id
. at 364.  The officers blocked Taylor’s car in a carwash stall by parking police cars in front of and behind her vehicle.  
Id.
  Officers then drew their guns and pointed them at Taylor. 
 Id
.  One of the officers then asked Taylor if she had any drugs with her.  
Id
.  After Taylor answered yes, an officer reached into Taylor’s car, grabbed her purse, opened it, and found methamphetamine.  
Id
.  One of the officers testified that at the time of the questioning, Taylor was not free to leave.  
Id. 
at 365.  This court held that the restraint on Taylor’s liberty was to such a degree that it constituted custody and that this was not an investigative detention situation.  
Id
.

Similarly, in the case of 
Amores,
 the court of criminal appeals held that the detention of a defendant was an arrest rather than an investigative detention. 
 
816 S.W.2d at 411.  In 
Amores
, based on a tip, a police officer acting alone and without any assistance from other officers blocked the defendant’s car in a parking lot, drew his weapon, ordered the defendant out of the car at gunpoint, ordered him to lie face-down on the pavement, and told him that he would be shot if he did not obey the officer’s orders.  
Id
.  Furthermore, the officer did not ask the defendant any questions before seizing him.  
Id
. at 412.  The court reasoned that under those facts, the defendant had been restricted or restrained in his liberty to such a degree as to constitute an arrest.  
Id
.  

Additionally, the court of criminal appeals’s decision 
in 
Burkes
 provides guidance in resolving this issue.  830 S.W.2d at 925.  In 
Burkes
, the court held that the seizure of the defendant was an arrest rather than an investigative detention under facts similar to the case before us.  
Id
.  In that case, the police received a tip stating that a “pit-bulldog with drugs taped to its belly could be found at an area of the city known as ‘The Front,’” 
an area composed of nightclubs and rundown buildings.  The area was notorious for illegal drug trafficking and use.  
Id
 at 923.  Four police officers went to the area to investigate the call.  
Id
.  When the squad car arrived in front of one of the nightclubs, several persons ran from the back of the building.  
Id
.  Burkes was one of these persons. 
 Id
.  One of the officers caught Burkes as he attempted to run away. 
 Id
.  The officer commanded Burkes to lie on the ground.  He then rolled Burkes over and placed handcuffs on him without questioning him as to why he was running away.  
Id
.  In that case, the court reasoned that the amount of force used to effect the stop combined with the fact that the investigative questioning occurred after Burkes was handcuffed rendered the detention an arrest rather than an investigative detention.  
Id. 
at
 
925.  

2. Application of Law to Facts

The facts of this case are similar to those in the cases discussed above.  
See Amores
, 816 S.W.2d at 407; 
Burkes,
 830 S.W.2d at 925;
 Taylor
, 874 S.W.2d at 362.  As in 
Amores
 and 
Taylor
, here, police officers blocked Akins’s vehicle in such a way that he was unable to leave the area.  Furthermore, like the officers in all three cases
, 
the police officers in this case pointed their guns at Akins, placed him on the ground, and handcuffed him.  Moreover, as in 
Taylor
 and 
Burkes
, the officers in this case did not ask Akins any investigative questions until 
after 
they had handcuffed him. 

Additionally, although Davis testified that he handcuffed Akins and pointed his gun at Akins because he was aware of Akins’s previous weapons charges, we note that Davis was assisted at the scene by three other officers.  Because there were four officers on the scene and one suspect, the likelihood that Akins would overpower the police officers was minimal.  
See Welcome v. State
, 865 S.W.2d 128, 133 (Tex. App.—Dallas 1993, pet. ref’d).

Further, there is no evidence that at the time of the seizure, the officers had reason to believe that Akins was in possession of a weapon.  There was no indication from the informant that Akins was in possession of a weapon, nor had any of the officers observed Akins display a weapon or exhibit any violent behavior.  Additionally, there is no evidence that Akins was attempting to evade the investigator’s questioning or that he even could have driven away from the scene if he had wanted to.  Before he was seized, Akins was sitting in his car but had not yet started the ignition.  Moreover, Davis testified that Akins’s vehicle was blocked in the parking lot by one of the investigator’s cars.

Based on these facts, it is clear that Akins was arrested when the officers handcuffed Akins, pointed their guns at him, placed him on the ground, and blocked his car in the parking lot.  
See
 
Tex. Code Crim. Proc. Ann. 
art. 15.22.  Further, we do not believe that the circumstances in this case suggest that the level of force used by the investigators was necessary to maintain officer safety or to thwart the suspect’s attempt to frustrate further inquiry.  
Rhodes
, 945 S.W.2d at 117.  Therefore, after reviewing the totality of circumstances in this case, we hold that the restriction on Akins’s freedom of movement amounted to the degree associated with an arrest, as opposed to an investigative detention.  See 
id
.  Therefore, because Akins was arrested without the benefit of an arrest warrant, we must decide if one of the warrant exceptions applied.  

C. 
Warrant Exception

Although the United States Constitution authorizes an arrest without warrant on probable cause, in Texas, the authority to arrest a suspect without a warrant is governed by statute. 
 See Florida v. White
, 526 U.S. 559, 564, 119 S. Ct. 1555, 1559 (1999); 
State v. Parson
, 988 S.W.2d 264, 266 (Tex. App.—San Antonio 1998, no pet.).  In Texas, a person may be legally arrested without a warrant only if (1) the arrest falls within one of the statutory provisions authorizing a warrantless arrest, and (2) the arrest meets the applicable probable cause requirement
.  See Anderson,
 932 S.W.2d at 506.

In this case, the State argues that Akins’s arrest fell within two exceptions contained in chapter 14 of the code of criminal procedure.  Initially, the State argues that Akins’s warrantless arrest was valid because it fell under the exception contained in article 14.01(b).  Article 14.01(b) provides that “[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.” 
 
Tex. Code Crim. Proc. Ann. 
art. 14.01(b).  The test for probable cause for a warrantless arrest under this provision is “[w]hether at that moment the facts and circumstances within the officer’s knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person
 had committed or was committing 
an offense.”  
Beverly v. State,
 792 S.W.2d 103, 104-05 (Tex. Crim. App. 1990) (emphasis added) (citing 
Beck v. Ohio
, 379 U.S. 89, 85 S. Ct. 223 (1964)).  In other words, although the statute states that the offense must be one that is committed within the officer’s presence or view, an officer can make a warrantless arrest based on an offense that was committed at an earlier time and further, the officer does not even have to personally see the offense committed before the warrantless arrest is justified under article 14.01(b).  
Id
. 

This means that in determining whether probable cause exists to believe an offense was committed within a officer’s presence or view, an officer’s knowledge and trustworthy information may come from facts and circumstances obtained from lay citizens.  
Id
.  For instance, the law is clear that probable cause for an arrest can exist based on the tip of a reliable informant if the informant’s information is highly detailed, and the details given by the informant are verified by the officers before making the arrest.  
See Whaley v. State
, 686 S.W.2d 950, 951 (Tex. Crim. App. 1985) (relying on 
Illinois v. Gates
, 462 U.S. 213, 232-33, 103 S. Ct. 2317, 2329-30 (1983), and 
Draper v. United States
, 358 U.S. 307, 313-14, 79 S. Ct. 329, 333-34 (1959)); 
Curry v. State
, 965 S.W.2d 32, 34 (Tex. App.—Houston [1st Dist.] 1998, no pet.).  Thus, if an officer has reasonably trustworthy information, which, when coupled with the officer’s personal observations, establishes probable cause to believe that an offense is being or has been committed, the warrant exception will apply.  
See Beverly
, 792 S.W.2d at 104-05 (holding although no offense was committed in the presence of the officer, a warrantless arrest was justified under article 14.01(b) because the officer had reasonably trustworthy information, which, when coupled with the officer’s personal observations, established probable cause to believe that an offense was being or had been committed).  We look to the totality of the circumstances to determine if probable cause existed based on an informant’s tip.  
See Gates
, 462 U.S. at 242-43, 103 S. Ct. at 2339-40; 
Adkins v. State
, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988).

In the instant case, Davis testified that he received information from a confidential informant whom he had worked with on more than twenty occasions in the past and that he had found the informant’s information to be  reliable and credible.  Davis stated that the informant’s tips had resulted in a number of arrests and convictions for drug possession.  Further, Davis testified that the informant told him that she had seen Akins in possession of an ounce of methamphetamine the previous day, that Akins kept the drugs in a plastic bag in his pocket, and that just prior to calling Davis she had spoken to Akins and that Akins told her that he was still carrying the drugs on his person.  The informant also gave Davis a physical description of Akins.  Based on previous encounters with Akins, Davis recognized the physical description the informant provided of the individual in possession of narcotics as an accurate description of Akins.  The informant also told Davis where Akins could be located, described the vehicle he would be driving including his license plate number, and stated that Akins would be in the company of a woman named Maria Robles, who was driving a maroon minivan. 

Within an hour of receiving the information, Davis proceeded to the convenience store where the informant had said Akins could be found.  Akins’s vehicle and a maroon minivan were parked in front of the store.  A short time after Davis began surveying the store, he observed Akins and a woman who matched the description of Maria Robles provided by the informant exit the store.  

Thus, after receiving information provided by a confidential informant, the police independently corroborated the details given by the informant when Davis identified Akins and his vehicle at the designated time and place.  Because the reliable informant provided detailed information that was verified by law enforcement officers, we conclude that probable cause existed for the arrest in this case.  
See Whaley, 
686 S.W.2d at 951 (holding that officers had probable cause for warrantless arrest because officers verified all details given by informant except question of whether suspect was carrying drugs; consequently, they had reasonable grounds to believe that remaining item of unverified information was also true).  Therefore, we hold that under the totality of the circumstances, the officers had probable cause to justify the warrantless arrest of Akins.  

Because we hold that the warrantless arrest of Akins fell within the warrant exception contained in article 14.01(b) of the code of criminal procedure and as a result was a legal arrest, we need not address the State’s contention that the arrest fell under an additional warrant exception.  Additionally, because we hold that the arrest was legal, we do not reach Akins’s assertion that the evidence should have been suppressed as the result of an illegal arrest.  
See 
Tex. R. App. P. 
47.1.

D. Evidence Obtained Subsequent to the Arrest

In the alternative
, 
Akins argues that the statement obtained after the arrest was inadmissible because Davis questioned him without first advising him of his 
Miranda
 rights.
(footnote: 4)  Further, he contends that the trial court erred in denying his motion to suppress the methamphetamine evidence because the methamphetamine was discovered as a result of the unwarned statement.
  He contends that the methamphetamine should be excluded as fruits of illegal activity in accordance with 
Wong Sun v. United States
, 371 U.S. 471, 83 S. Ct. 407 (1963), and article 38.23 of the code of criminal procedure.  We disagree.

E. Application of 
Miranda

In 
Miranda
 
v. Arizona
, The United States Supreme Court held that a person questioned by law enforcement officers after being “taken into custody or otherwise deprived of his freedom of action in any significant way” must first “be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.”  384 U.S. at 444, 86 S. Ct. at 1612.  Statements elicited in noncompliance with this rule may not be admitted for certain purposes in a criminal trial.  
See, e.g., Harris v. New York
, 401 U.S. 222, 226, 91 S. Ct. 643, 646 (1971) (admitting for impeachment purposes defendant’s statement that was elicited without 
Miranda
 warning).  However, while the statement taken in violation of 
Miranda 
must be suppressed, other evidence subsequently obtained as a result of that statement (i.e., the “fruits” of the statement) need not be suppressed.  
Michigan v. Tucker
, 417 U.S. 433, 452, 94 S. Ct. 2357, 2368 (1974); 
Oregon v. Elstad
, 470 U.S. 298, 314, 105 S. Ct. 1285, 1296 (1985); 
see also Baker v. State
, 956 S.W.2d 19, 23-24 (Tex. Crim. App. 1997) (holding mere violations of 
Miranda 
rule are not covered by the state exclusionary rule contained in article 38.23).  The rule in 
Wong Sun 
requires suppressing the fruits of a defendant’s statement only when the statement was obtained through actual coercion.  
Tucker
, 417 U.S. at 448-49, 94 S. Ct. at 2365-67; 
Elstad
, 470 U.S. at 314, 105 S. Ct. at 1296.

Because Akins did not receive his 
Miranda
 warnings before being questioned by the investigators, his statement regarding his possession of methamphetamine was inadmissible.  
See Miranda
, 384 U.S. at 492, 494, 86 S. Ct. at 1637-38.  Accordingly, we hold that the trial court erred by failing to suppress the statement.  However, we also hold that because the methamphetamine was merely a “fruit” obtained as a result of the unwarned questioning, the trial court did not err by refusing to suppress the methamphetamine evidence.
(footnote: 5)  
See McGee v. State
, 105 S.W.3d 609, 614 (Tex. Crim. App.), 
cert. denied
, 540 U.S. 1004 (2003) (holding a warrantless search incident to arrest permits officers to search a defendant, or areas within the defendant’s immediate control, to prevent the concealment or destruction of evidence).

F. Harm Analysis

Having found that the trial court erred in admitting Akins’s statement, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
Tex. R. App. P.
 44.2.  If the error is constitutional, we apply rule 44.2(a) and reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).  Otherwise, we apply rule 44.2(b) and disregard the error if it did not affect appellant’s substantial rights.  
Tex. R. App. P.
 44.2(b); 
see Mosley v. State,
 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999); 
Coggeshall v. State
, 961 S.W.2d 639, 642-43 (Tex. App.—Fort Worth 1998, pet. ref’d).

With respect to the erroneous admission or exclusion of evidence, constitutional error is presented only if the correct ruling was constitutionally required, because a mere misapplication of the rules of evidence is not constitutional error
.  See Alford v. State,
 22 S.W.3d 669, 673 (Tex. App.—Fort Worth 2000, pet. ref’d)
.  The United States Supreme Court held that, in 
Miranda
, it laid down concrete constitutional guidelines for law enforcement agencies and courts to follow.  
See Dickerson v. United States
, 530 U.S. 428, 439-40, 120 S. Ct. 2326, 2333-34 (2000).  These guidelines established that the admission of any statement given during custodial interrogation of a suspect would depend on whether the police provided the suspect with the constitutionally required 
Miranda 
warnings.  
Id
.
  We have held in this case that the trial court did not follow those constitutional guidelines.  Consequently, we hold that the error is constitutional error.  
See Alford
, 22 S.W.3d at 673.  Because we determine that the error is constitutional, rule 44.2(a) is applicable.  
Tex. R. App. P.
 44.2(a).

Here, Akins was charged with the offense of possession with intent to deliver a controlled substance.  “Possession” means actual care, custody, control, or management. 
Tex. Health & Safety Code Ann
. § 481.002(38) (Vernon Supp. 2006-07). 
 The improperly admitted statement went only to the issue of Akins’s possession of methamphetamine.  Inadmissible evidence can be rendered harmless if other evidence of the defendant’s guilt is overwhelming.  
See Anderson v. State
, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986).  
The methamphetamine found in Akins’s pocket was 
abundant evidence of his possession of methamphetamine from which the jury could have concluded that Akins was in possession of methamphetamine
. 
 Therefore, after carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we hold beyond a reasonable doubt that the trial court’s error did not contribute to Akins’s conviction or punishment.  
Tex. R. App. P.
 44.2(a).
  
Thus, we disregard the error.  
See
 
id
.

IV. Conclusion

Having overruled Akins’s six points, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

LIVINGSTON, J. filed a concurring opinion.

PUBLISH

DELIVERED: August 31, 2006

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-263-CR

DEWAYNE H. AKINS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

CONCURRING OPINION

------------

I respectfully concur to the majority opinion.  I write separately only to disagree with the majority opinion’s analysis on the timing of appellant’s arrest.  As the majority notes above, in its brief, the State conceded that appellant was arrested without a warrant.  However, unlike the majority, I do not read the State’s brief to concede that appellant was arrested as soon as the officers approached him and placed him on the ground at the gas station.  I believe that the State conceded that appellant was arrested, but did not concede 
the timing of 
appellant’s arrest (when the officers initially approached him, or after the officers approached him and talked to him, and appellant told the officers that he had drugs in his pocket).  An appellate court must liberally construe a party’s brief.  
Tex. R. App. P.
 38.1(e), 38.9; 
Burke v. State
, 6 S.W.3d 312, 315 (Tex. App.—Fort Worth 1999, no pet.) (op. on P.D.R.).  Thus, because the State did not concede 
when 
the arrest occurred, we should not assume it conceded that appellant was arrested immediately.  

Similarly, during oral argument, appellant’s counsel conceded that the investigators had reasonable suspicion to approach appellant and investigate. Therefore, unlike the majority, I believe our sole inquiry is to determine whether appellant was detained for investigation when the investigators blocked appellant’s truck, drew their weapons, placed appellant on the ground, and placed him in handcuffs, or whether he was immediately under arrest.
(footnote: 6)  If the initial stop was an investigative detention as opposed to an arrest, we have nothing further to review regarding the preliminary seizure because appellant conceded reasonable suspicion to investigate.  
See Hill v. State
, 161 S.W.3d 771, 772 (Tex. App.—Beaumont 2005, no pet.) (holding appellant waived issue by conceding it in oral argument).  Then, we would only proceed to determine whether the investigative detention revealed sufficient probable cause to arrest without a warrant.  However, if the preliminary stop was truly an arrest as appellant contends, we must determine whether the arrest was a proper warrantless arrest under article 14.01 of the code of criminal procedure at that point in time.  
See 
Tex. Code Crim. Proc. Ann.
 art. 14.01 (Vernon 2005). 

Applicable Law

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
State v. Ross
, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); 
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  W
hen officers possess reasonable suspicion justifying a temporary investigative detention, they may use such force as is reasonably necessary to effect the goal of the stop:  investigation, maintenance of the status quo, or officer safety.  
Morris v. State
, 50 S.W.3d 89, 95 (Tex. App.—Fort Worth 2001, no pet.); 
see Rhodes v. State
, 945 S.W.2d 115, 117 (Tex. Crim. App.), 
cert. denied
, 522 U.S. 894 (1997).  Reasonableness must be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight.  
Rhodes
, 945 S.W.2d at 118;
 McCraw v. State, 
117 S.W.3d 47, 52 (Tex. App.—Fort Worth 2003, pet. ref’d).  Allowances must be made for the fact that officers must make quick decisions under tense, uncertain, and rapidly changing circumstances.  
Rhodes
, 945 S.W.2d at 118.  However, if the force utilized exceeds that reasonably necessary to effect the goal of the stop, such force may transform an investigative stop into a full-blown arrest.  
See State v. Moore
, 25 S.W.3d 383, 385-86 (Tex. App.—Austin 2000, no pet.) (holding that although officer possessed reasonable, articulable facts justifying an investigative detention, handcuffing of suspect constituted excessive force under the circumstances and transformed the detention into an arrest). 

Analysis

I believe that the majority’s reliance on 
Burkes v. State 
is misplaced.  830 S.W.2d 922 (Tex. Crim. App. 1991).  Unlike in our case, the police in 
Burkes
 did not receive a call that a named person would be in possession of the drugs, but merely that the drugs would be taped to a dog.  Further, the police in 
Burkes 
received an anonymous phone call, whereas the police in this case received a phone call from a known confidential informant.  Additionally, during trial, the arresting officer testified that the defendant was under arrest when he was handcuffed.  
Id.
 at 925.  The court of criminal appeals stated that “it must certainly be considered persuasive when the arresting officer 
admits 
that a suspect was under arrest.”  
Id.
  Here, the arresting officer did not testify that appellant was arrested when he was handcuffed, he merely stated that appellant was not free to leave. 

Additionally, the majority’s “white horse case” is also distinguishable from the present case.  
See Taylor v. State
, 874 S.W.2d 362 (Tex. App.—Fort Worth 1994, no pet.).  In 
Taylor
, the police received a tip from a person, but the opinion does not say whether they had received credible information from that person before.  
Id. 
at 363.  When the police blocked the defendant’s car in the car wash bay, she was by herself, unlike in the present case, where appellant was with Maria Robles and an unidentified man.  Additionally, the record in 
Taylor 
contains no indication that the defendant was in a high crime/drug area, had previous weapons charges, or that the police drew their weapons because of officer safety.  

Here, the investigators blocked appellant’s car in the parking lot, drew their weapons, placed appellant on the ground, and handcuffed him.  Appellant contends that he was arrested when the police officers approached his truck. However, it cannot be said that whenever police draw weapons on a person that the resulting seizure must be an arrest rather than an investigatory detention.  
Morris v. State
, 195 S.W.3d 740, 745 (Tex. App.—Amarillo 2006, no pet.);
 see Rhodes
, 945 S.W.2d at 117.  Similarly, ordering a suspect to the ground does not necessarily convert an investigatory detention into an arrest.  
Morris
, 195 S.W.3d at 745; 
Nargi v. State
, 895 S.W.2d 820, 822 (Tex. App.—Houston [14th Dist.] 1995), 
pet. dism’d as improvidently granted
, 922 S.W.2d 180, 181 (Tex. Crim. App. 1996).  As stated above, officers may use such force as is reasonably necessary to effect the goal of the stop, including handcuffing the defendant.  
See Morris
, 50 S.W.3d at 95.  Further, reasonableness must not be judged from the advantage of hindsight, but rather by the perspective of the officer at the time of the detention.  
See McCraw
, 117 S.W.3d at 52.  

A police officer’s belief that a suspect is armed may be predicated on the nature of the suspected criminal activity.  
Morris
, 195 S.W.3d at 745.  Because weapons are closely associated with drug dealing, a reasonable suspicion that a suspect is dealing drugs supports a reasonable inference that the suspect is armed.  
Id.
; 
see Carmouche v. State
, 10 S.W.3d 323, 330 (Tex. Crim. App. 2000).  Investigator Davis testified that he knew that appellant had a lengthy criminal history and prior weapons charges, and that he knew appellant from prior drug investigations.  Investigator Davis stated that the gas station was in an area of high drug activity.  He stated that the confidential informant told him, and he confirmed before approaching appellant, that appellant would be at the gas station with Maria Robles.  The confidential informant also gave Investigator Davis a description of appellant’s vehicle, including the license plate number, and that Robles would be with him in a maroon minivan.  He confirmed these facts at the gas station.  He stated that the officers approached appellant because they thought that he had drugs on his person and was about to leave the location.  He stated that he did not think that they would be able to follow appellant because it was a semi-rural area and appellant would most likely get away.  Investigator Davis testified that he did not get a warrant before approaching appellant because he did not have time to get the warrant before appellant left the gas station. Investigator Davis testified that the police officers approached appellant with their weapons drawn out of concern for officer safety. While there were no weapons recovered, I would hold that the totality of circumstances justified the police officers’ actions as reasonably necessary to protect the officers.  

Additionally, Investigator Davis testified that after handcuffing appellant, an officer patted appellant down to determine if he had weapons on him.  Because there is no evidence that appellant was patted down to determine if he had any weapons on his person 
before
 being handcuffed, I would hold that handcuffing appellant in these circumstances was reasonable and did not convert the detention into an arrest.  
See Morris
, 195 S.W.3d at 746.  Additionally, Investigator Davis investigated appellant’s possible drug possession.
  But cf. Amores v. State
, 816 S.W.2d 407, 412 (Tex. Crim. App. 1991) (holding detention was an arrest after an officer blocked the defendant’s car, drew his weapon, ordered the defendant out of the car at gunpoint, ordered him to lie on the pavement, and told him that if he did not obey he would be shot, when officer 
did not 
ask defendant any questions).  Investigator Davis testified that he asked appellant if he had methamphetamine, and appellant stated that he did.

As stated above, the opinion of the officer does not conclusively determine the nature of the detention.  
See McCraw
, 117 S.W.3d at 52.  The fact that Investigator Davis stated that appellant was not “free to leave” does not convert the investigative detention into an arrest.  The officer’s statements, when taken together with the other evidence, demonstrate that appellant was not under arrest when the investigators handcuffed him and asked him questions.   

Thus, after reviewing Investigator Davis’s testimony, I would hold that the investigators used reasonably necessary force when they blocked appellant’s car in the parking lot, drew their weapons, placed appellant on the ground, and handcuffed him.  I believe that the investigators did not have probable cause to arrest appellant until 
after
 appellant stated that he had methamphetamine in his pocket.  Thus, I would hold that, under the present facts and circumstances, such force was necessary to safely conduct the investigation and that the investigative detention did not become an arrest until after appellant admitted that he possessed methamphetamine and was then searched.  At that point, it became a warrantless arrest for an offense committed within the officer’s view.  
See 
Tex. Penal Code Ann.
 § 14.01(b) (Vernon 2005).

While the result would remain the same under my analysis or the majority’s, I respectfully concur based upon the foregoing.

TERRIE LIVINGSTON

JUSTICE

PUBLISH

DELIVERED: August 31, 2006

FOOTNOTES
1:
384 U.S. 436, 86 S. Ct. 1602 (1966).

2:
We note that as support for its assertion that Akins’s arrest was legal, despite the fact that the police had not obtained an arrest warrant, the State argues that “[b]ecause officers verified all the details given by the information except the question of
 whether the suspect was carrying drugs
, they had reasonable grounds to believe that the remaining item of unverified information was also true.” [Emphasis added.]  As further support for the proposition that a statutory warrant exception applied to the warrantless arrest, the State asserts that “[b]ased on information provided by the confidential informant, . . . whose information regarding Appellant was verified by the officers in every respect 
save for whether Appellant actually had drugs on his person
, officers had probable cause to arrest Appellant for a felony offense.” [Emphasis added.] Hence, the State concedes that Akins’s arrest occurred before the officer asked Akins whether he had drugs on him.  

3:
[A]round the turn of the century a Texas law firm had a case in which a white horse owned by the client’s taxi service reared in the street, causing an elderly woman to fall and injure herself.  The partner handling the case asked a young associate to find a case on point.  The associate came back several hours later with a case involving an elderly lady who had fallen in the street after a taxi company’s black horse had reared in front of her.  When the associate took this case to the partner, the partner said, “Nice try, son. Now go find me a white horse case.”   

Hilland v. Arnold, 
856 S.W.2d 240, 242 n.1 (Tex. App.—Texarkana 1993, no writ).

4:
In its brief, the State does not claim that the investigator’s question was not interrogation.  Therefore, we will not address that issue.  

5:
In his brief, Akins does not contend that his statement regarding his possession of methamphetamine was obtained through coercive means, only that the statement was obtained as the result of the unwarned custodial interrogation.  

6:
Appellant addresses only a probable cause argument in his brief.  The State addresses both probable cause and reasonable suspicion in its brief.

COMMENTS AND ANNOTATIONS
Comment 1:
MAJORITY BY JUSTICE MCCOY CONCURRENCE BY JUSTICE LIVINGSTON