

## In The
## Court of Appeals
## Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00076-CR
_____

RONALD SHIPP, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 294th Judicial District Court
Van Zandt County, Texas
Trial Court No. 14911

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In the fall of 1993,[1] Wendy Landreth was driving her daughter, Sheila Prater, and sister, Charlotte Clem, along a Van Zandt County[2] road, when Ronald Shipp overtook Landreth's vehicle with his truck, shot out the rear glass of her vehicle, caused a crash between the two vehicles, shot and killed Landreth, shot Clem in the arm, and kidnapped and raped Prater, his former girlfriend. Arrested hours later without the benefit of an arrest warrant, Shipp ultimately pled guilty to having murdered Landreth.[3] His plea was entered under a plea agreement by which he retained the right to contest the denial of his motion to suppress his confession, the fruit of his warrantless arrest. We affirm the trial court's judgment because we find that the trial court's ruling—that Shipp's arrest was based on probable cause—is amply supported by this record.

Before setting out our analysis of the sole issue on appeal, we provide a bit more of the underlying facts.

---

[1]The Texas Court of Criminal Appeals granted an out-of-time appeal in this case from the 1994 judgment such that we may address the merits of this appeal. *See Ex parte Shipp*, No. AP-76,061, 2008 WL 5245337 (Tex. Crim. App. Dec. 17, 2008) (not designated for publication).

[2]This case was transferred to this Court from the Twelfth District Court of Appeals in Tyler as part of the Texas Supreme Court's docket equalization program. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are not aware of any conflict between the precedent of the Tyler court and the precedent of this Court on any issue relevant in this appeal. *See* TEX. R. APP. P. 41.3.

[3]Shipp was convicted of the offense of murder and received life imprisonment in the Texas Department of Criminal Justice—Institutional Division.

2

Clem was asleep in the car when her sister alerted her that a truck was approaching without lights on. While the truck was passing them, Clem and Prater heard a gunshot followed by shattering of the rear window. They recognized the driver of the truck as Shipp, Prater's ex-boyfriend of four to five years. The truck maneuvered in front of Landreth's vehicle, suddenly stopped, and caused Landreth's vehicle to hit Shipp's truck. Shipp got out of the truck, ran to Landreth, and pointed a gun at her. Clem heard Prater screaming as Shipp next grabbed Prater and held her at gunpoint. After Shipp instructed Prater to get into his truck, he shot Landreth in the chest at close range and also shot Clem in the arm. After Shipp drove away, Clem realized Landreth was dead. Clem ran to a nearby home and called 9-1-1. Clem was transported to the hospital.

At approximately 4:00 a.m., police officers found Landreth's body beside her abandoned car. Captain Rock Ellis arrived at the scene, was given Shipp's name as the suspect by Clem, and was informed of Prater's kidnapping. An all-points bulletin, issued around 4:30 a.m., described Shipp's black Ford Ranger pickup truck and warned that Shipp was armed and dangerous.

According to Prater, after Shipp raped her, he stopped at a gas station to get something to drink. While he was inside, Prater escaped in the truck and ended up at the Athens Police Department. Ellis traveled to Athens to interview Prater at approximately 5:30 or 6:00 a.m. Prater described the kidnapping and also reported being raped by Shipp.

After receiving information from people who had spotted Shipp running on foot, Ellis "called in the dogs from the Texas prison system. We were trying to set up several different manhunts."

3

Ellis stated he was "answering questions or going to different locations where potential sightings were." At last, Ellis was told "there was a person at the Terrell State Hospital want[ing] to turn himself in report[ing] to be Ronald Glyn Shipp." Shipp was apprehended by the Terrell Police Department around 11:15 a.m. Ellis transported Shipp back to Van Zandt County and presented him to Magistrate Brenda Sanford, who advised Shipp of his *Miranda*[4] rights and issued a warrant for his arrest.[5] Shipp waived his rights in writing and confessed to the murder.

Counsel moved to suppress Shipp's confession on the ground that it was the fruit of an illegal arrest without warrant. When asked at the hearing why Ellis did not obtain a warrant before the arrest, he stated Shipp was a flight risk and "[w]e were trying to apprehend him. I just didn't have time to come out of the field and go in and sit down and write." He testified, "I had every man in the field I could get trying to locate the suspect . . . there was a manhunt going on. I didn't have time. I was fearful of anybody coming in contact with him."

In denying the motion to suppress, the trial court found that probable cause existed for Shipp's detention, that he was adequately advised of his rights, that he voluntarily and intelligently waived them, and that the confession was also voluntary.

Trial courts' decisions to deny motions to suppress are reviewed for abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999); *Villarreal v. State*, 935 S.W.2d 134, 138

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[5]It appeared that Shipp also had warrants outstanding from other counties at the time of arraignment.

(Tex. Crim. App. 1996); *Maysonet v. State*, 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd). Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also afford such deference to a trial court's ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Miller v. Fenton*, 474 U.S. 104 (1985). On the other hand, the trial court's application of the law of search and seizure to the facts and those questions not turning on credibility and demeanor are reviewed de novo. *Ross*, 32 S.W.3d at 856; *Hernandez v. State*, 957 S.W.2d 851, 852 (Tex. Crim. App. 1998); *Maysonet*, 91 S.W.3d at 369.

Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold it if that ruling was supported by the record and was correct under any theory of law applicable to the case. *Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *Maysonet*, 91 S.W.3d at 369.

At the outset, we presume that police conduct was proper. *Gaines v. State*, 888 S.W.2d 504, 508 (Tex. App.—El Paso 1994, no pet.). In order to defeat the presumption of the officer's proper conduct, Shipp was required to first produce evidence to establish that a search or seizure occurred without a warrant. *Id.* (citing *Simmons v. United States*, 390 U.S. 377, 389–90 (1968)). In this case,

Shipp met this burden by establishing that he was arrested without a warrant. *Id.* Thus, the burden shifted to the State to prove, by a preponderance of the evidence, the reasonableness of Shipp's arrest. *Id.*

Shipp was first arrested by Terrell police based on the all-points bulletin.[6] A police broadcast may be sufficient to provide an officer with probable cause to stop persons matching the description for investigatory purposes if based on reliable information furnished by a witness to a criminal act. *Id.* at 509. The test as to probable cause in such cases is whether the requesting officer was in possession of sufficient knowledge to constitute probable cause. *Id.*; *Weeks v. State*, 417 S.W.2d 716, 718 (Tex. Crim. App. 1967).

On appeal, Shipp cites Article 14.04 of the Texas Code of Criminal Procedure for the rule that a peace officer can pursue and arrest a person without a warrant if he or she "is shown satisfactory proof, upon the representation of a credible person, that a felony has been committed and the offender is about to escape." *See* TEX. CODE CRIM. PROC. ANN. art. 14.04 (Vernon 2005). Shipp focuses on the time elapsing between when Landreth's body was found and when Shipp was arrested. His main contention is that officers had plenty of opportunity to obtain a warrant, especially since Shipp was detained at the Terrell Police Department. Thus, Shipp contends the State cannot meet its burden to demonstrate he was "about to escape."

---

[6]There is no indication Shipp was free to leave the police department.

6

The State responds to Shipp's argument using Article 14.04 of the Texas Code of Criminal Procedure. The trial court, believing Ellis' testimony, could have determined Shipp "was highly mobile and could have easily escaped detection had police not intervened" at the hospital. *See Hughes v. State*, 24 S.W.3d 833, 839 (Tex. Crim. App. 2002). "It would have been unreasonable to break pursuit, abandon the fresh trail of a recently committed crime, and force police to acquire an arrest warrant" in hopes that Shipp would remain at the hospital undetained. *Id*.

It has long been the rule in this State that a warrantless arrest can be justified by probable cause to believe that the suspect has committed, or is committing, an offense. *Amores v. State*, 816 S.W.2d 407, 416 (Tex. Crim. App. 1991); *Rhoades v. State*, 84 S.W.3d 10, 14 (Tex. App.—Texarkana 2002, no pet.). Article 14.01(b) of the Texas Code of Criminal Procedure provides that "a peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005). The Texas Court of Criminal Appeals has been clear in its interpretation of this rule and has stated that the test for probable cause for a warrantless arrest under Article 14.01(b) is "[w]hether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Beverly v. State*, 792 S.W.2d 103, 104–05 (Tex. Crim. App. 1990) (citing *Beck v. Ohio*, 379 U.S. 89 (1964)); *Rhoades*, 84 S.W.3d at 14.

It is clear that an officer can make a warrantless arrest for an offense that was committed at an earlier time, even where the officer did not personally see the offense being committed. *Akins v. State*, 202 S.W.3d 879, 889 (Tex. App.—Fort Worth 2006, pet. ref'd) (citing *Beverly*, 792 S.W.2d at 104–05). An officer may rely on lay persons, witnesses, or credible informants in making the overall probable cause assessment. *See Lunde v. State*, 736 S.W.2d 665, 667 (Tex. Crim. App. 1987); *Akins*, 202 S.W.3d at 897. Thus, the bottom line is that, if an officer has reasonably trustworthy information which, when coupled with the officer's personal observations, establishes probable cause to believe that an offense is being or has been committed, the warrant exception will apply. *See Beverly*, 792 S.W.2d at 104–05. Whether probable cause exists is determined by considering the totality of the circumstances. *Amores*, 816 S.W.2d at 413.

Here, Ellis had a few personal observations and a considerable amount of reasonably trustworthy information, which together provided him probable cause for his arrest of Shipp.

After receiving the initial report of the shooting, Ellis drove to the crime scene and observed Landreth's damaged and disabled vehicle as well as Landreth's dead body, which according to other reports in the record was clearly showing the signs of a shotgun blast to the chest. It was clear to Ellis that there had been a shooting, based on the wound to Landreth and the shotgun shells lying nearby. Ellis was told that Shipp was the shooter and that Shipp was in a black Ford Ranger pickup truck with a white female kidnap victim. About 4:30 a.m, Ellis put out an all-points bulletin for Shipp indicating that he was armed and dangerous. Soon thereafter, Ellis received a report that

Shipp's kidnap victim, Prater, was located at the Athens Police Department, to which Ellis went and interviewed her. Prater told Ellis that she had been kidnapped and raped by Shipp. Prater also gave Ellis a statement in which she stated that Shipp had shot Landreth. Still later, Ellis received a report that Shipp was at Terrell State Hospital wanting to turn himself in or check himself in. Ellis asked Terrell police to hold Shipp until Ellis could get there. Ellis went to Terrell, arrested Shipp, and transported him back to Athens, where—a few hours later—Shipp was taken before Sanford, who read him his rights before a statement was taken from him.

We conclude that a reasonable officer in Ellis' position[7] would have probable cause to determine Shipp had committed an offense, such that a warrant was not required for his arrest. *See Beverly*, 792 S.W.2d at 104–05. Thus, based on the totality of the circumstances in this case, the trial court was justified in finding that the arrest was legal.[8]

---

[7]While we find no indication that Ellis knew the following information at the time he arrested Shipp, Clem also gave a statement putting the murder weapon in Shipp's hand. Since Prater drove Shipp's truck to the Athens Police Department after her escape and told them of the circumstances and of Shipp's actions, officers there had retrieved from Shipp's truck the "short barrel shotgun believed to be the weapon used in the shooting."

[8]Also, Article 14.03(a)(1) of the Texas Code of Criminal Procedure authorizes a warrantless arrest of persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony. This article requires "the functional equivalent of probable cause to believe that a particular person has committed a felony." *Johnson v. State*, 722 S.W.2d 417, 421 (Tex. Crim. App. 1986), *overruled in part on other grounds by McKenna v. State*, 780 S.W.2d 797 (Tex. Crim. App. 1989); *see* TEX. CODE CRIM. PROC. ANN. art. 14.03 (Vernon Supp. 2009). Again, Shipp was found at "Terrell State Hospital [and] wanted to turn himself in." Hospitals have been found to be suspicious places by Texas courts. *Dyar v. State*, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003). The fact that Shipp was found in a hospital, coupled with his reportedly wanting to turn himself in, and the remaining circumstances, could also have given Ellis

9

Because the arrest was legal, Shipp's voluntary confession was validly admitted as the fruit of a legal arrest. Accordingly, we find that the trial court did not abuse its discretion in failing to suppress the confession.

We affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:     December 3, 2009
Date Decided:       December 15, 2009

Do Not Publish

---

probable cause that Shipp was guilty of a felony such that the warrant exception applied to the Terrell Police Department's arrest.