Opinion issued February 28, 2008












     





In The
Court of Appeals
For The
First District of Texas




NO. 01-06-01159-CR




DEON DEMECHE JONES, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1053627




MEMORANDUM OPINION

          A jury convicted appellant, Deon Demeche Jones, of possession of cocaine in
an amount over four grams and less than 200 grams with intent to deliver,


 and the
trial court assessed his punishment at imprisonment for 35 years. In four issues,
appellant argues that (1) the evidence was legally and factually insufficient to prove
that he possessed cocaine with the intent to deliver and (2) the evidence was legally
and factually insufficient to prove that he possessed more than four grams but less
than 200 grams of cocaine.
          We affirm.
Background
          On the night of January 12, 2006, Houston Police Department (HPD) Officer
R. Corrales was working undercover with a team of officers in an area known to have
heavy narcotics activity. In the course of his undercover investigation, Officer
Corrales made contact with a man named Frank Ross, who told Officer Corrales that
he knew where the officer could buy some cocaine. Ross got into Officer Corrales’s
unmarked car and directed him to a nearby residence. Officer Corrales testified that
he had a good view of the front door of the residence when Ross approached the door
and knocked. Officer Corrales testified that the knock was answered by a black male
wearing a white T-shirt and red shorts, whom he later identified as appellant. 
Appellant had opened the solid inner door and Officer Corrales could see him through
the closed screen door speaking with Ross. Then Officer Corrales saw appellant open
the screen door, open the top of a pill bottle, and pour something into Ross’s hand. 
Ross then immediately made his way back to Officer Corrales and gave Officer
Corrales the rocks of cocaine. Officer Corrales gave Ross $40 in marked bills, and
Ross took the money back to appellant. Then he walked down the street while
appellant looked on from the doorway. Officer Corrales testified that Ross did not
get much farther than the next house down before the rest of the HPD team moved in
to make the arrest.
          Officer Corrales testified that the arrest team moved quickly. When the arrest
team moved in to arrest Ross, Officer Corrales told them the second suspect,
appellant, was still standing in the doorway. Officer Corrales testified that Officer
J. McFarland then crossed the yard to arrest appellant, and Officer Corrales witnessed
appellant pushing against the screen door, which had been opened by Officer
McFarland, and trying to close the solid door. Officer Corrales then witnessed a
“scuffle” between Officer McFarland and appellant and informed another officer that
Officer McFarland needed help arresting appellant.
          Officer McFarland testified that as he passed the large tree in front of the
residence and crossed the yard he saw appellant standing in the doorway with the
screen door partially open. Officer McFarland pointed his flashlight at appellant and
ordered appellant to get down on the ground, but appellant took a couple of steps
back into the house. Officer McFarland testified that he could see that appellant was
holding an orange pill bottle and a clear plastic bag containing a green leafy
substance. Officer McFarland then saw appellant throw the bag behind him and lean
back and drop the pill bottle onto a window sill behind a couch that was about a foot
or a foot and a half away from the door. Officer McFarland testified that only a few
seconds passed from the time he jumped out of the van until he had appellant
handcuffed. After Officer McFarland handcuffed appellant, he handed appellant over
to Officer P. Escobel. Officer McFarland then recovered the pill bottle from the
window sill behind the couch and noted that there were three other people in the
house—a Hispanic male and two females.
          Officer Escobel testified that, after he left the van, he handcuffed Ross and then
took appellant, already handcuffed, from Officer McFarland and searched him. He
testified that he recovered a white film canister from appellant’s pocket. The canister
contained seven small bags, which each contained a white powder substance that
field-tested positive for cocaine. Officer Escobel testified that, in his experience, the
cocaine was packaged in the smaller bags because it was ready to be sold and that
each little bag was probably worth about $20. In appellant’s other pocket, Officer
Escobel found the $40 in marked bills that Officer Corrales had used to purchase the
drugs.
          Officer Corrales testified about the various substances collected in conjunction
with appellant’s arrest. He identified the three rocks of cocaine he had purchased
from appellant, which totaled 0.6 grams. He identified the pill bottle from which
appellant had gotten the cocaine he sold to Officer Corrales and later tossed behind
the sofa. The pill bottle contained 15.4 grams of cocaine in rock form. He also
identified a film canister taken from appellant’s pocket, which contained smaller bags
with a total of two grams of powdered cocaine. Officer McFarland testified that, in
his experience, the amount of cocaine appellant had in the pill bottle was consistent
with someone who was a “street dealer” and that the approximate value of the cocaine
confiscated from appellant was $1600. Officer Corrales testified that, in his
experience, drug users would usually have less than a gram of cocaine, usually
between two to four rocks, for personal use. He also explained that he had not been
able to keep the money used to purchase the cocaine as evidence because the city had
had to reuse it for other investigations.
          At trial, the State presented the testimony of Rosa Rodriguez, the chemist who
tested the substances confiscated from appellant. Rodriguez testified that she tested
each of the three rocks that Officer Corrales bought from appellant, and she identified
all of them as cocaine. She also tested a sample from each of the seven plastic bags
of powder from the film canister and identified them as cocaine. Regarding the
orange pill bottle, Rodriguez testified that she visually examined the contents and
determined that all of the rocks were the same color and texture. She then did a
random sampling of some of the rocks, and she identified them as cocaine. She could
not remember exactly how many of the rocks were subjected to a chemical analysis,
but she said that it was probably more than four of them and maybe more than 10 of
them. Rodriguez also testified that simulated substances would look different from
a true controlled substance, either in color, texture, or both, and that she would have
done a separate chemical analysis on any rock that seemed even slightly different. 
Appellant objected to the substance from the pill bottle being admitted into evidence,
arguing that the State had failed to prove beyond a reasonable doubt that all 15.6
grams were cocaine. The trial court overruled the objection.
          At trial, appellant presented the testimony of Eteshia Pointer. Pointer testified
that she was appellant’s girlfriend and that she knew the power in the duplex had
been turned off, so the porch light could not have been on. Her testimony was
unclear, however, regarding whether the power was off to the entire duplex or only
on one side. She also testified that appellant was at the residence where he was
arrested only because he was buying various gardening supplies from a friend for his
landscaping business.
          Appellant also presented the testimony of Leticia Gray, who was present in the
residence when appellant was arrested. She testified that she was at the residence to
buy narcotics and was watching television when Ross came to the door to buy the
drugs on behalf of Officer Corrales. She testified that some other dark-skinned man
dressed in a white shirt, whose name she did not know, was at the residence, that he
answered the door, and that he was the one who sold Officer Corrales the cocaine. 
She testified that this man dropped his pill bottle and left through the back door after
he sold the narcotics and that, at some point, appellant arrived to buy some marijuana. 
She testified that the door was closed when the police approached and that appellant
was then standing in the front door. She also testified that the screen door was very
dark and hard to see through. Gray did not see what happened after the police entered
the residence because she got down on the ground as ordered by the officer who came
into the house.
          The jury found appellant guilty of possession of a controlled substance
weighing more than four grams and less than 200 grams and assessed his punishment
at imprisonment for 35 years. This appeal followed.
Analysis
          In four issues, appellant argues that the evidence was legally and factually
insufficient to support his conviction for possession with intent to deliver cocaine and
that the evidence was legally and factually insufficient to prove that he possessed
more than four grams but less than 200 grams of cocaine.
Standard of Review
          When an appellant challenges both legal and factual sufficiency of the
evidence, we must first determine whether the evidence was legally sufficient to
support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex. App.—Houston
[1st Dist.] 1998, no pet.). We review the legal sufficiency of the evidence by viewing
the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
Although our analysis considers all the evidence presented at trial, we may not
re-weigh the evidence and substitute our judgment for that of the fact finder. Id.
          Factual sufficiency analysis is broken down into two prongs. First, we must
ask whether the evidence introduced to support the verdict, although legally
sufficient, is so weak that the jury’s verdict seems clearly wrong and manifestly
unjust. Watson v. State, 204 S.W.3d 404, 414–15 (Tex. Crim. App. 2006) (quoting
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). Second, we must ask
whether, considering the conflicting evidence, the jury’s verdict, although legally
sufficient, is nevertheless against the great weight and preponderance of the evidence. 
Id. at 415. In conducting this review, we view all of the evidence in a neutral light. 
Id. at 414. We are also mindful that a jury has already passed on the facts and that we
cannot order a new trial simply because we disagree with the verdict. Id. What
weight to give contradictory testimonial evidence is within the sole province of the
jury because it turns on an evaluation of credibility and demeanor. Cain v. State, 958
S.W.2d 404, 408–09 (Tex. Crim. App. 1997). Therefore, we must defer appropriately
to the fact finder and avoid substituting our judgment for its judgment, and we may
find evidence factually insufficient only when necessary to prevent manifest injustice. 
Id. at 407; see also Johnson, 23 S.W.3d at 12.
Possession with Intent to Deliver
          Appellant was charged with knowingly possessing cocaine, a controlled
substance listed in Penalty Group 1, with the intent to deliver. See Tex. Health &
Safety Code Ann. §§ 481.102(3)(D), 481.112(a) (Vernon 2003 & Supp. 2007). 
Appellant contends that the evidence was insufficient to prove that he was the person
who sold the drugs to the undercover police officer, that he possessed the pill bottle
containing the rocks of cocaine, and that he had the intent to distribute the cocaine.
          A. Legal Sufficiency
          To prove appellant possessed a controlled substance, the State must prove that
appellant exercised care, custody, control, or management over the controlled
substance, that he was conscious of his connection with it, and that he knew what it
was. Tex. Health & Safety Code Ann. §§ 481.002(38), 481.112(a); Swarb v.
State, 125 S.W.3d 672, 684 (Tex. App.—Houston [1st Dist.] 2003, pet. dism’d). 
When contraband is not found on the accused’s person or when the accused is not in
exclusive control of the place where the contraband is found, the State must establish
independent facts and circumstances that link the accused to the contraband so as to
suggest that the accused had knowledge of the contraband and exercised control over
it. Swarb, 125 S.W.3d at 684. Texas courts have identified several factors that may
help to establish a link between the accused and the contraband, including whether
(1) the accused was present when the controlled substance was found; (2) the
controlled substance was in plain view; (3) the accused was in proximity to the
controlled substance and had access to it; (4) the accused was under the influence of
a controlled substance when arrested; (5) the accused possessed other contraband;
(6) the accused made incriminating statements when arrested; (7) the accused
attempted to flee; (8) the accused made furtive gestures; (9) the odor of the controlled
substance found was present; (10) the accused owned or had the right to possess the
place where the controlled substance was found; (11) the controlled substance was
found in an enclosed place; (12) the amount of controlled substance found was
significant; and (13) the accused possessed a large amount of cash. Id. The number
of factors supported by the evidence is not as important as the “logical force” they
collectively create to prove that a crime has been committed. Roberson v. State, 80
S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). Evidence that
links the accused to the controlled substance must establish a connection that was
more than fortuitous. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).
          The State presented evidence that the film canister containing seven small bags
of cocaine powder was found in appellant’s pocket. See Akins v. State, 202 S.W.3d
879, 892 (Tex. App.—Fort Worth 2006, pet. ref’d) (holding that finding controlled
substance in accused’s pocket was “abundant evidence of his possession of [a
controlled substance] from which the jury could have concluded that [accused] was
in possession of [a controlled substance]”). Regarding the pill bottle containing the
rocks of cocaine, sufficient evidence linked appellant to those drugs. Officer Corrales
identified appellant as the suspect who had sold him the cocaine and appellant never
left the doorway of the house until other officers approached to arrest him. Officer
McFarland saw the pill bottle in appellant’s hand as he approached to arrest him, and
he also saw appellant drop the pill bottle behind a nearby couch. The pill bottle was
later recovered from a window sill directly behind the couch, which was within
appellant’s reach. The officers also testified that they found the $40 that Officer
Corrales had used to purchase the cocaine in appellant’s pocket. While appellant
correctly points out that the mere presence of the accused at a place where contraband
is located does not make him a party to joint possession,


 the evidence presented by
the State is of such strong logical force that a reasonable fact finder could conclude
beyond a reasonable doubt that appellant knowingly possessed cocaine. See King,
29 S.W.3d at 562; Roberson, 80 S.W.3d at 735–36.
          In order to prove possession with intent to deliver, the State must prove that
appellant: (1) exercised care, custody, control, or management over the controlled
substance; (2) intended to deliver the controlled substance to another; and (3) knew
that the substance in his possession was a controlled substance. Tex. Health &
Safety Code Ann. §§ 481.002(38), 481.112(a) (Vernon 2003 & Supp. 2007); Nhem
v. State, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Intent
to deliver a controlled substance can be proved by circumstantial evidence, including
evidence regarding an accused’s possession of the contraband. Mack v. State, 859
S.W.2d 526, 528 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Additional factors
that courts have considered in determining whether the accused had the intent to
deliver include (1) the nature of the location at which the accused was arrested;
(2) the quantity of contraband in the accused’s possession; (3) the manner of
packaging; (4) the presence, or lack thereof, of drug paraphernalia for either use or
sale; (5) the accused’s possession of large amounts of cash; and (6) the accused’s
status as a drug user. Garcia, 218 S.W.3d at 764.
          Appellant had been witnessed selling cocaine to an undercover police officer
just moments before his arrest, appellant still had the marked bills used to purchase
the cocaine in his pocket, and he had a film canister with powdered cocaine divided
into seven smaller bags, each worth about $20. When viewed in the light most
favorable to the verdict, the evidence is legally sufficient to show that a rational trier
of fact could have found that appellant knowingly possessed cocaine with the intent
to deliver beyond a reasonable doubt. See King, 29 S.W.3d at 562; Nhem, 129
S.W.3d at 699.
 
          B. Factual sufficiency
          Regarding the factual sufficiency of the evidence, appellant points to several
facts that conflict with the State’s evidence. Appellant argues that it was not logical
that he would stand in the doorway of a house watching an officer arrest a man to
whom he had just sold drugs without attempting to escape. He also argues that the
officers could not have clearly identified him because the porch was poorly lit he was
standing behind a screen door. Appellant also claims that the State did not meet its
burden of proof because it failed to produce the marked bills used to purchase the
drugs from appellant. Appellant also points to Gray’s testimony that appellant was
not the person who sold the drugs to Officer Corrales. Gray testified that another man
sold the cocaine and then left through the back door moments after the sale.
          However, Officer Corrales testified that the marked bills were not available for
use at trial because it was being reused in other cases. He also testified that a
streetlight, a porch light, and a small amount of light from inside the house provided
enough light for him to see the porch. Officer McFarland testified that he used his
flashlight to light the area when he moved in to arrest appellant. Regarding
appellant’s argument that he would have tried to escape if he had been guilty of
selling cocaine, the State points out that appellant did try to escape once Officer
McFarland approached the front porch to arrest him. Officer Corrales testified that
he saw appellant remain standing in the doorway for the very short amount of time
between the sale and Ross’s and appellant’s arrests. The jury was permitted to find
the testimony of the HPD officers credible despite the testimony of appellant’s
witnesses. See Cain, 958 S.W.2d at 408–09. Thus, after examining all of the
evidence, we determine that the evidence supporting the verdict is neither so weak
that the jury’s verdict seems clearly wrong or manifestly unjust, nor is the conflicting
evidence so strong that the verdict is against the great weight and preponderance of
the evidence. Watson, 204 S.W.3d at 414–15.
          We overrule appellant’s first and second issues.
Possession of Cocaine Weighing Between Four and 200 Grams
          In his third and fourth issues, appellant argues that the State’s evidence was
legally and factually insufficient to prove that he possessed cocaine weighing more
than four grams and less than 200 grams. Specifically, he argues that the State failed
to show that each individual rock of cocaine found in the orange pill bottle tested
positive for cocaine.
          A. Legal sufficiency
          The State must show that the cocaine possessed by appellant weighed at least
four grams in the aggregate—it is not required to separate the cocaine from
adulterants and dilutants. Tex. Health & Safety Code Ann. § 481.112(d) (Vernon
2003). A sampling of each distinct parcel of a substance alleged to be narcotics is
enough to satisfy this burden. Zone v. State, 118 S.W.3d 776, 777 (Tex. Crim. App.
2003); see also Melton v. State, 120 S.W.3d 339, 343–44 (Tex. Crim. App. 2003)
(holding that it was unnecessary for State to test each rock to determine whether it
contained cocaine when rocks were all found in same bag and were visually examined
to establish that they all had same color and texture, and State did conduct random
sampling of some rocks).
          The State produced Rodriguez’s testimony regarding the procedure she used
to establish that the substances confiscated during appellant’s arrest were cocaine. 
She took a sample of the powdered substance from each of the seven individual bags
found in the film canister and determined that they were all cocaine. We conclude
that the State presented legally sufficient evidence that all of the powder found in the
canister, totaling two grams, was cocaine. See Zone, 118 S.W.3d at 777. She also
tested each of the three rocks sold to Officer Corrales and determined that they were
all cocaine. We conclude that the State presented legally sufficient evidence that all
0.6 grams of the rocks sold to Office Corrales were cocaine. See id. Finally, she
testified that she visually inspected all of the rocks in the orange pill bottle and
determined that they were of similar color and texture. She then randomly selected
at least four of the rocks to test and determined that they were cocaine. We conclude
that the State presented legally sufficient evidence that all 15.4 grams of the rocks
found in the orange pill bottle were cocaine. See Melton, 120 S.W.3d at 343–44.
 
          B. Factual Sufficiency
          Appellant did not present any conflicting evidence or attempt to test the
substances himself in order to establish that the rocks in the pill bottle were not
cocaine. See Gabriel v. State, 900 S.W.2d 721, 722 (Tex. Crim. App. 1995) (holding
that evidence was sufficient when the State tested only five of 54 bags containing
cocaine and noting that “appellant could have conducted independent chemical tests
on all fifty-four [bags] to show they did not contain the same substance”) (citing Tex.
Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2007)). Therefore, the evidence,
when viewed in a neutral light, shows that the jury’s verdict neither was against the
great weight and preponderance of the evidence nor seems clearly wrong or
manifestly unjust. Watson, 204 S.W.3d at 414–15. We conclude that the State
presented factually sufficient evidence that appellant possessed cocaine weighing
between four and 200 grams.
          We overrule appellant’s third and fourth issues.











Conclusion

          We affirm the judgment of the trial court.





                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).